MICHAEL D. BRESLAUER [SBN 110259]
mbreslauer@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
Telephone (619) 231-0303
Facsimile (619) 231-4755

ROBERT R. BARNES [SBN 144881]
robertbarn@outlook.com
THE BROKEN-BENCH LAW FIRM
10982 Poblado Road, No. 1621
San Diego, California 92127-5327
Telephone: (619) 218-0520

*Co-Counsel for Debtor-In-Possession*
*And Plan Proponent*
CUKER INTERACTIVE, LLC

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>CUKER INTERACTIVE, LLC,<br><br>Debtor. | Case No. 18-07363-LA11<br><br>**DEBTOR'S MOTION TO CONFIRM FOURTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED SEPTEMBER 15, 2020**<br><br>Date: November 18, 2020<br>Time: 10:00 a.m.<br>Dept: Two (2)<br><br>Honorable Louise DeCarl Adler |

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1
II. PROCEDURAL HISTORY ........ 2
III. OVERVIEW OF THE PLAN ........ 4
IV. VOTING ON THE PLAN ........ 4
V. STANDARD FOR CONFIRMATION ........ 4
VI. STANDARD OF PROOF ........ 5
VII. THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(A) ........ 5
A. Section 1129(a)(1) (Plan Compliance with Title 11) ........ 5
1. Section 1123 (Mandatory and Permissive Provisions of the Plan) ........ 6
(a) Section 1123(a) (Mandatory Provisions) ........ 6
(i) Section 1123(a)(1) (Designation of Classes of Claims and Interests) ........ 6
(ii) Section 1123(a)(2) (Specification of Unimpaired Classes) ........ 8
(iii) Section 1123(a)(3) (Specification of Treatment of Impaired Classes) ........ 8
(iv) Section 1123(a)(4) (Same Treatment of Claims Within A Class) ........ 9
(v) Section 1123(a)(5) (Adequate Means for Implementation of The Plan) ........ 9
(vi) Section 1123(a)(6) (Prohibition on the Issuance of Nonvoting Equity Securities) ........ 10
(vii) Section 1123(a)(7) (Selection of Officers and Directors) ........ 10
(b) Section 1123(b) (Permissive Provisions) ........ 10
(i) Section 1123(b)(1) (Impairment of Claims) ........ 11
(ii) Section 1123(b)(2) (Assumption or Rejection of Executory Contracts) ........ 11
(iii) Section 1123(b)(3) (Settlement or Retention of Claims) ........ 11

(iv) Section 1123(b)(6) (Provisions Not Inconsistent with The Bankruptcy Code) .............. 12

B. Section 1129(a)(2) (Proponent Compliance with Title 11) .................. 12

C. Section 1129(a)(3) (Good Faith)........................................................ 13

D. Section 1129(a)(4) (Disclosure of Payments)..................................... 15

E. Section 1129(a)(5) (Disclosure of Officers, Directors, and Insiders)............................................................................................. 16

F. Section 1129(a)(6) (Rate Changes)..................................................... 16

G. Section 1129(a)(7) (Best Interests of Creditors Test)........................... 17

H. Section 1129(a)(8) (Acceptance or Unimpairment) ............................. 17

I. Section 1129(a)(9) (Administrative and Priority Claims) .................... 17

J. Section 1129(a)(10) (Acceptance by One Impaired Class) .................. 18

K. Section 1129(a)(11) (Feasibility)........................................................ 18

L. Section 1129(a)(12) (Section 1930 Fees) ........................................... 20

M. Section 1129(A)(13) (Retiree Benefits).............................................. 20

N. Section 1129(a)(14) (Domestic Support Obligations).......................... 20

O. Section 1129(a)(15) (Individual Debtor Requirements)....................... 20

P. Section 1129(a)(16) (Transfers Under Plan) ....................................... 20

VIII. THE PLAN DOES NOT IMPAIR ANY CLASS. .......................................... 21

IX. CONCLUSION ........................................................................................... 24

# TABLE OF AUTHORITIES


**Page(s)**

**Federal Cases**

*In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986) .......... 18

*Ad Hoc Committee of Holders of Trade Claims v. PG&E Corp.*, 614 B.R. 344 (Bankr. N.D. Cal. 2019) .......... 22, 23

*In re Ambanc La Mesa Ltd. Partnership*, 115 F.3d 650 (9th Cir. 1997) .......... 5, 17

*In re Art & Architecture Books of the 21st Century*, No. 2:13-bk-141135-RK, 2016 Bankr. LEXIS 859 (Bankr. C.D. Cal. Mar. 18, 2016) .......... 19

*Barakat v. Life Ins. Co. of Va.* (*In re Barakat*), 99 F.3d 1520 (9th Cir. 1996) .......... 7

*In re Coastal Equities, Inc.*, 33 B.R. 898 (Bankr. S.D. Cal. 1983) .......... 14

*In re Downtown Inv. Club, LLP*, 89 B.R. 59 (9th Cir. BAP 1988) .......... 12

*In re Future Energy Corp.*, 83 B.R. 470 (Bankr. S.D. Ohio 1988) .......... 5

*In re Jartran, Inc.*, 44 B.R. 331 (Bankr. N.D. Ill. 1984) .......... 17

*In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986) .......... 6

*In re Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) .......... 5

*In re Johnston*, 21 F.3d 323 (9th Cir. 1994) .......... 7

*In re Jorgensen*, 66 B.R. 104 (B.A.P. 9th Cir. 1986) .......... 14

*In re L & J Anaheim Assocs.*,
995 F.2d 940 (9th Cir. 1993) ........ 8

*Onink v. Cardelucci (In re Cardelucci)*,
285 F.3d 1231 (9th Cir. 2002) ........ 21, 22

*In re PG&E Corp.*,
610 B.R. 308 (Bankr. N.D. Cal. 2019) ........ 22, 23

*In re PI Enterprises (U.S.) Inc.*,
324 F.3d 197 (3d Cir. 2003) ........ 23

*In re Prudential Energy Co.*,
58 B.R. 857 (Bankr. S.D.N.Y. 1986) ........ 5

*In re PWS Holding Corporation*,
228 F.3d 224 (3d Cir. 2000) ........ 5

*In re Rexford Props LLC*,
558 B.R. 352 (Bankr. C.D. Cal. 2016) ........ 7

*In re Stolrow's, Inc.*,
84 B.R. 167 (9th Cir. BAP 1988) ........ 14

*In re Sylmar Plaza, L.P.*,
314 F.3d 1070 (9th Cir. 2002) ........ 13

*In re Texaco, Inc.*,
84 B.R. 893 (Bankr. S.D.N.Y. 1988) ........ 5, 10

*In re Tucson Self-Storage, Inc.*,
166 B.R. 892 (9th Cir. BAP 1994) ........ 7

*Ultra Petroleum Corp. v. Ad Hoc Committee of Unsecured Creditors (In re Ultra Petroleum Corp.)*,
943 F.3d 758 (5th Cir. 2019) ........ 23

*United States v. Energy Resources Co., Inc.*,
495 U.S. 545 (1990) ........ 18

*In re Victory Constr. Co.*,
9 B.R. 549 (Bankr. C.D. Cal. 1981) ........ 14

*In re W. Asbestos Co.*,
313 B.R. 832 (N.D. Cal. 2003) ........ 6

*In re WCI Cable, Inc.*,
282 B.R. 457 (Bankr. D. Or. 2002) .......... 5

**Federal Statutes**

11 U.S.C.
§ 365(a) .......... 11
§ 726(a)(5) .......... 21, 22
§ 1122(a) .......... 7
§ 1123(a)(1) .......... 6, 7
§ 1123(a)(2) .......... 8
§ 1123(a)(3) .......... 8
§ 1123(a)(4) .......... 9
§ 1123(a)(5)(A)-(J) .......... 9
§ 1123(a)(7) .......... 10
§ 1123(b)(2) .......... 11
§ 1123(b)(3) .......... 11, 12
§ 1123(b)(6) .......... 10, 12
§ 1124 .......... 8, 21, 22, 23
§ 1126(f) .......... 4, 17, 21
§ 1129(a) .......... 5
§ 1129(a)(1) .......... 5, 6, 12
§ 1129(a)(2) .......... 12, 13
§ 1129(a)(5)(A)(i) .......... 16
§ 1129(a)(5)(A)(ii) .......... 16
§ 1129(a)(5)(B) .......... 16

28 U.S.C.
§ 1930 .......... 20
§ 1930(a)(6) .......... 20
§ 1961(a) .......... 20

Bankruptcy Code
§ 101(31)(B) .......... 16
§ 503(b) .......... 17
§ 507(a)(2) .......... 6, 17
§ 507(a)(4) .......... 6
§ 507(a)(5) .......... 6
§ 507(a)(8) .......... 6
§ 1107(a) .......... 2
§ 1108 .......... 2
§ 1122 .......... 6, 7, 12

§ 1123 ........ 6, 12
§ 1123(a) ........ 6
§ 1123(b) ........ 6, 10
§ 1124(1) ........ 8, 21, 22
§ 1126 ........ 17
§ 1129 ........ 1, 5, 12
§ 1129(a)(3) ........ 13, 14
§ 1129(a)(4) ........ 15, 16
§ 1129(a)(5) ........ 16
§ 1129(a)(6) ........ 16, 17
§ 1129(a)(7) ........ 17, 21
§ 1129(a)(8) ........ 17, 21
§ 1129(a)(9) ........ 17
§ 1129(a)(9)(A)-(B) ........ 18
§ 1129(a)(11) ........ 18, 20
§ 1129(a)(12) ........ 20
§ 1129(a)(13) ........ 20
§ 1129(a)(14) ........ 20
§ 1129(a)(15) ........ 20
§ 1129(a)(16) ........ 20

**TO THE HONORABLE LOUISE DECARL ADLER, INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Please take notice that Cuker Interactive, LLC ("Cuker"), Debtor and Debtor-In-Possession ("Cuker" or "Debtor") in the above-captioned bankruptcy case, by and through the undersigned counsel of record, hereby moves the Court for its order confirming Cuker's Fourth Amended Plan of Reorganization dated September 15, 2020 (the "Plan"). This motion is based on the Notice accompanying the Motion, this Motion and Memorandum, the Declarations of Adel Atalla (the "Atalla Decl.") and Stacy Elledge Chiang (the "Chiang Decl."), the records and files in the docket maintained in this Case and any other oral and or documentary evidence submitted to the Court at or prior to the confirmation hearing date.[1]

## I.

## INTRODUCTION

Cuker is pleased to propose its Plan which is consistent with its message to Creditors[2] and this Court that it would pay all Allowed Claims 100% of what is owed. This is accomplished under the Plan with payments in cash on the Effective Date or on the date that a creditor's claim is deemed to be an Allowed Claim, if objected to. Cuker's 'cash on the barrelhead' Plan should be confirmed, and any objections overruled, as the Plan satisfies all elements of Section 1129 of the Bankruptcy Code.

The Chapter 11 case was precipitated by and is fallout from a bet-the-business lawsuit with retail behemoth, Wal-Mart, Inc. Following several years of litigation, with its concomitant significant attorney's fees and expenses, Cuker's $12 Million jury award victory was reduced by the District Court presiding over the trial to just

[1] The Chiang Declaration includes updated and reformatted versions of some of the exhibits to the Disclosure Statement, which are out of date.

[2] Capitalized terms in this Memorandum have the meaning ascribed to such terms in the Plan.

over $745,000. Atalla Decl. ¶7. With attorney's fees and monetary sanctions awarded against Wal-Mart ($400,299; *Id.*), the amount of Cuker's judgment was pared back to just over $3.4 Million. *Id.* Both sides appealed and timing of the resolution of the Chapter 11 case was tied to the resolution of that appeal. On February 12, 2020, the Eighth Circuit Court of Appeals issued its decision affirming in all respects the District Court's underlying decisions (which had been distilled into an Amended Judgment). The decision dovetailed with the onset of the Coronavirus pandemic; the Debtor's Plan exclusivity periods were extended to May 31, 2020 and July 30, 2020 and the debtor filed its Plan on May 29, 2020.

Cuker is a service based digital advertising company with little or no fixed assets and few accounts receivable. Among its assets are claims that its former counsel, Pillsbury Winthrop Shaw Pittman ("PWSP"), having represented Cuker in the Wal-Mart Trial, breached the standard of due care and their fiduciary duties owed to Cuker. Those claims are pending in an American Arbitration Association proceeding but Cuker's claims in that proceeding are not needed for performance of its Plan.

## II.

## PROCEDURAL HISTORY

On December 13, 2018 (the "Petition Date"), Cuker commenced a voluntary case under Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of California (the "Court"). Cuker's First Meeting of Creditors was concluded on March 5, 2019. No committee of unsecured creditors has been appointed. Cuker continues to operate its business as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, subject to the control and supervision of this Court.

The Debtor immediately began to administer its case, by seeking and ultimately obtaining approval as requested to pay all insider salaries, timely obtaining approval for hiring its Chapter 11 counsel, obtaining approval for special

counsel to handle its Eighth Circuit appeal (with its necessary component of Cuker's borrowing $100,000[3] from an insider) and generally to administer its Chapter 11 case. The Court established regular status conferences and the Debtor timely submitted its status conference reports, keeping the court and interested parties apprised of its affairs during the Chapter 11 case. Every Monthly Operating Report ("MOR") was timely filed, collectively evidencing profitable operations following the Petition Date. Atalla Decl. ¶¶10, 12-13. Indeed, Cuker's ability to profitably operate during its Chapter 11 case has given rise to a substantial portion of the cash to be used to pay creditors 100% of their allowed claims on the latter of the Effective Date or on the date on which the Creditor's claim is found to be an Allowed Claim. Atalla Decl. ¶20.

Cuker sought and obtained (over PWSP's objections), consecutive extensions of exclusivity to publish and obtain confirmation of a Chapter 11 Plan. This was notable since in its objection to further extend exclusivity, PWSP harbored an express desire in its own proffered plan to strip away Cuker's prosecution of its claims against PWSP. (Dkt. No. 167). The Court overruled those objections and granted exclusivity extensions through May 31, 2020 and July 30, 2020.

Cuker settled two of the three attorney fee claims with counsel claiming a lien in the Wal-Mart Judgment Segregated Account (the "Segregated Account") and with Court approval paid and retired the claims of Henry Law Firm ("HLF") and Shults & Adams, LLP ("S&A"). Atalla Decl. ¶9. The third attorney fee claim was filed by PWSP which also claimed a lien in the Segregated Account.

Cuker filed an adversary proceeding (Case No 20-90077) to challenge the existence of PWSP's lien and following Cuker's motion for summary judgment the Court entered judgment in Cuker's favor that PWSP was a general unsecured

[3] This loan was approved (Dkt. No. 67) as an unsecured administrative expense from Insider, Osama Atalla. The loan was repaid according to its approved terms during the administration of the Chapter 11 case. Atalla Decl. ¶9, n. 4.

creditor for all purposes in this Chapter 11 case. PWSP filed its notice of appeal of that judgment (and also to the Court's decision to deny PWSP's petition to compel arbitration of the issues raised in the adversary proceeding). Both of these appeals are now pending before the United States District Court for the Southern District of California. At this time, all classes of creditors in Cuker's Plan are unsecured.

## III.

## OVERVIEW OF THE PLAN

The Plan provides for 100% payment with interest of all creditor claims on the latter of the Effective Date or the date on which such Creditor's Claim, if objected to, is determined by the Bankruptcy Court to be an Allowed Claim. No classes of the creditors are impaired under Cuker's Plan and all classes and all holders of claims or interests therein are therefore conclusively deemed to accept the Plan. [11 U.S.C. § 1126(f).]

Pursuant to the Plan, and consistent with the treatment otherwise required by the Bankruptcy Code and Bankruptcy Rules, all unclassified Claims (the Internal Revenue Service and the California Franchise Tax Board), all Allowed Claims in Classes 1 (Priority Claims), 2 (Secured claim of Wolfe), 3B (PWSP) and Class 4 (general unsecured claims) will be paid in full in the latter of the Effective Date or on the date their Claim, if objected to, becomes an Allowed Claim. Class 5 (Insiders and subject to a forbearance agreement) and Class 6 (membership interests of Cuker Design, Inc.) are likewise unimpaired by the Plan.

## IV.

## VOTING ON THE PLAN

The 100% Plan has no impaired Classes, all Classes are deemed to have accepted the Plan, and, accordingly, there is no voting on the Plan.

## V.

## STANDARD FOR CONFIRMATION

For the Court to confirm the Plan, it must be established that the Plan

complies with the requirements set forth in 11 U.S.C. § 1129(a). See *In re WCI Cable, Inc*., 282 B.R. 457, 466 (Bankr. D. Or. 2002); *In re Texaco, Inc*., 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988). Although Section 1129(a) lists sixteen prerequisites for confirmation, not each of them need be met in this case as it does not involve an individual debtor. See *In re Ambanc La Mesa Ltd. Partnership*, 115 F.3d 650, 653 (9th Cir. 1997) ("*Ambanc*"); see also *In re Johns-Manville Corp*., 843 F.2d 636, 648 (2d Cir. 1988).

## VI.

## STANDARD OF PROOF

As stated by the Ninth Circuit in *Ambanc*, "[t]he bankruptcy court must confirm a Chapter 11 [plan proponent's] plan of reorganization if the [plan proponent] proves by a preponderance of the evidence" that the plan satisfies Section 1129. *Ambanc*, 115 F.3d at 653. The proponent of a plan has the burden of proof on each element of Section 1129(a). *In re Prudential Energy Co*., 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986). However, for those creditors who object, it is up to that objecting party to "produce evidence to establish the validity of the objection before the ultimate burden of proving that all the requirements of Section 1129(a) have been met is shifted to the plan proponent." *In re Future Energy Corp*., 83 B.R. 470 (Bankr. S.D. Ohio 1988). As discussed below, Cuker's Plan should be confirmed.

## VII.

## THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(A)

The Plan fully complies with the provisions of Section 1129(a) of the Bankruptcy Code as established below.

### A. Section 1129(a)(1) (Plan Compliance with Title 11)

Section 1129(a)(1) requires a finding that the plan complies with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1); *In re PWS Holding Corporation*, 228 F.3d 224, 230 (3d Cir. 2000); *In re Johns-Manville Corp*., 843 F.2d at 648-649; *In re Texaco Inc.,* 84 B.R. at 905. This provision

encompasses the requirements of Sections 1122 and 1123 of the Bankruptcy Code, which are the substantive provisions most relevant in satisfying Section 1129(a)(1). *In re Johns-Manville Corp*., 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986). Section 1122 governs classification of claims and interests and Section 1123 sets forth the provisions that are required to be included, and those that may be included, in a plan of reorganization. 11 U.S.C. §§ 1122 and 1123. As shown below, the Plan satisfies the requirements of Section 1129(a)(1).

**1. Section 1123 (Mandatory and Permissive Provisions of the Plan)**

Section 1123 of the Bankruptcy Code sets forth the mandatory and permissive contents of a plan. The Plan complies with Section 1123 because it contains each of the mandatory provisions listed in Section 1123(a), as well as some of the permissive provisions listed in Section 1123(b).

**(a) Section 1123(a) (Mandatory Provisions)**

Section 1123(a) of the Bankruptcy Code sets forth the mandatory requirements with which every Chapter 11 plan must comply. See 11 U.S.C. § 1123(a). As demonstrated below, the Plan fully complies with those requirements.

**(i) Section 1123(a)(1) (Designation of Classes of Claims and Interests)**

Subject to Section 1122 of the Code, a plan must designate classes of claims, other than claims of kind specified in Section 507(a)(2) (administrative expenses), 507(a)(3) (involuntary case gap claims), or 507(a)(8) (unsecured priority tax claims) and classes of interests. 11 U.S.C. § 1123(a)(1). See *In re W. Asbestos Co*., 313 B.R. 832, 841, n.11 (N.D. Cal. 2003).

In the Plan, the Debtors have appropriately not sought to classify priority claims under Section 507(a)(2), (a)(4), (a)(5) and (8) of the Bankruptcy Code. Instead, such claims are included in Section IV(A)(1)(a) and (b) of the Plan ("Treatment of Unclassified Claims"), which sets forth the treatment of administrative expense claims and priority tax claims. The designation of such

claims under the Plan as unclassified claims is in accordance with Section 1123(a)(1) of the Bankruptcy Code. Additionally, by designating Classes 1 through 6 in Section IVI of the Plan ("Classes of Claims and Interests"), the Debtors have satisfied the requirement of 11 U.S.C. § 1123(a)(1).

Under Section 1122(a), a claim or interest may be placed in a particular class under a plan only if such claim or interest is substantially similar to the other claims or interests of such class. 11 U.S.C. § 1122(a). Section 1122 does not require that all claims or interests that are substantially similar be placed within the same class. Ninth Circuit authority is clear—separate classification of substantially similar claims is appropriate when there is a "legitimate business or economic justification" for doing so. *Barakat v. Life Ins. Co. of Va*. (*In re Barakat*), 99 F.3d 1520, 1526 (9th Cir. 1996); see also *In re Rexford Props LLC*, 558 B.R. 352, 361 (Bankr. C.D. Cal. 2016) ("Rexford Properties").

Courts have broad discretion to classify claims. *In re Johnston*, 21 F.3d 323, 327-328 (9th Cir. 1994) (holding that separate classification was permissible and that bankruptcy courts have "broad latitude in classifying claims"). Moreover, a plan proponent is allowed considerable discretion to classify claims and interests according to the facts and circumstances of the case so long as the classification scheme does not violate basic priority rights or manipulate voting. See *In re Tucson Self-Storage, Inc.*, 166 B.R. 892, 897 (9th Cir. BAP 1994). The Ninth Circuit distinguishes separate classification that serves business or economic objectives from separate classification for the sole purpose of gerrymandering. See *In re Barakat*, 99 F.3d at 1526.

Here, given the absence of creditor voting (because all classes are conclusively presumed to accept the Plan) the Debtor's classification schedule, revised to omit the previously secured but now fully satisfied claims of HLF and S&A, seeks no advantage through gerrymandering: Wolfe, Class 2, claims to hold security and is placed in a separate class, PWSP remains in class 3B, albeit now

treated as unsecured, and all unsecured trade debt (Class 4) is placed in its own class, save for two creditors, one who is settling its claim with the Debtor outside the Plan in a Notice of Intended Action (Class 4A - Husch Blackwell) and the other a vehicle Lessor (Class 4B – ACAR Leasing) whose lease is current and is assumed in connection with the Plan. Class 5 contains claims by the Debtor's Insiders and Class 6 is the Debtor's sole equity holder. The Debtor's classification schedule was designed to implement Cuker's Plan to pay 100% of all non-Insider claims (inclusive of the priority tax claims filed by the Internal Revenue Service and the California Franchise Tax Board) in cash on the Effective Date or when the creditor's claim is determined to be an Allowed Claim.

**(ii) Section 1123(a)(2) (Specification of Unimpaired Classes)**

A plan must "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2). Section IV of the Plan s that all classes of claims and interests are unimpaired under the Plan.

Section 1124(1) of the Bankruptcy Code provides that "a class of claims or interests is impaired under a plan unless . . . the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(1). The Ninth Circuit has held that, when determining impairment under Section 1124, "[t]he narrow question that thus arises is whether . . . 'legal, equitable, [or] contractual rights' were changed by the Plan . . .." See *In re L & J Anaheim Assocs.*, 995 F.2d 940, 943 (9th Cir. 1993). The impairment questions under 11 U.S.C. § 1124, particularly regarding the unimpairment interest rate, are addressed in greater detail in Section VIII below.

**(iii) Section 1123(a)(3) (Specification of Treatment of Impaired Classes)**

A plan must "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3). This section is not implicated in

by the Plan because no class of claims is impaired.

**(iv) Section 1123(a)(4) (Same Treatment of Claims Within A Class)**

A plan must provide "the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). This provision provides creditors of the same class with a right to equality of treatment. Article IV of the Plan provides for equality of treatment for each claim or interest within a particular class. The Plan, therefore, complies with Section 1123(a)(4) of the Bankruptcy Code.

**(v) Section 1123(a)(5) (Adequate Means for Implementation of The Plan)**

A plan must "provide adequate means for the plan's implementation" and lists several examples of what may constitute "adequate means." 11 U.S.C. § 1123(a)(5)(A)-(J). The methods of plan implementation set forth in Section 1123(a)(5) are "self-executing." In other words, a plan of reorganization may propose actions to implement the plan notwithstanding contrary non-bankruptcy law or agreements. 7 COLLIER ON BANKRUPTCY ¶ 1123.01[5] at 1123-10 - 1123-11 and n. 21 (Alan N. Resnick & Henry J. Sommer eds. 16th) (citing, inter alia, *Pac. Gas & Elec. Co. v. California ex rel. California Dept. of Toxic Substances*, 350 F.3d 932, 937 (9th Cir. 2003)). The examples of adequate means for implementation of a plan provided in Section 1123(a)(5) are illustrative and the Section does not exclude or limit any other means. *Id.*

Here, Section V and various other provisions of the Plan set forth with specificity the manner in which the Plan will be implemented and effectuated, including (i) the vesting and retention of all property of the Estate, including all claims, rights and Causes of Action, in the Reorganized Debtor, as of the Effective Date, Plan §VII(E); (ii) funding for the Plan in accordance with the provisions of the

Plan, including the cash on hand and any needed additional cash from the Debtor's principal, Aaron Cuker, Plan §V(A); (iii) Insiders' contractual forbearance from assertion of rights or receipt of funds until after all claims are fully paid. *Id.*; (iv) closing of Cuker's Chapter 11 case, Plan §VIII(H). The Atalla Decl. sets forth that the Reorganized Debtor will have sufficient cash available to make the distributions required to be made under the Plan on the Effective Date and thereafter. See Atalla Decl. ¶¶11, 13 & Exhibits A-D. Accordingly, the requirements of Section 1123(a)(5) are satisfied.

**(vi) Section 1123(a)(6) (Prohibition on the Issuance of Nonvoting Equity Securities)**

Here, there are no non-voting equity securities (or any securities) issued under the Plan. Accordingly, Section 1123(a)(6) is inapplicable to the Debtor.

**(vii) Section 1123(a)(7) (Selection of Officers and Directors)**

A plan shall "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." 11 U.S.C. § 1123(a)(7). Here, the Plan provides for the continued services of the existing Officers. The Debtor, as a California single member limited liability company, has no board of directors. Thus, this Section is satisfied.

**(b) Section 1123(b) (Permissive Provisions)**

Section 1123(b) of the Bankruptcy Code sets forth the permissive provisions that may be incorporated into a Chapter 11 plan, including any "provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1123(b)(6). Section 1123(b) suggests certain permissive plan provisions. 11 U.S.C. § 1123(b); *In re Texaco Inc.*, 84 B.R. at 906. The Plan specifically includes a number of the suggested discretionary Plan provisions set forth in Section 1123(b), including: (i) the assumption of the sole executory contract/unexpired lease not

previously assumed (Plan § IV(A)(2)(i)); (ii) the retention and enforcement of claims by the Reorganized Debtor (Plan §§VI(A)(2)(h) and VII(F); and (iii) other provisions that do not violate the Bankruptcy Code.

**(i) Section 1123(b)(1) (Impairment of Claims)**

A plan proponent may impair or leaves unimpaired any class of claims, secured or unsecured, or of interests. In this case, the Plan properly leaves unimpaired all classes of claims and interests. See Plan §IV.

**(ii) Section 1123(b)(2) (Assumption or Rejection of Executory Contracts)**

A plan may "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor . . .." 11 U.S.C. § 1123(b)(2). Consistent with this provision, Section VI of the Plan provides in relevant part that pre-petition executory contracts are all rejected unless (i) such contract has been assumed, assumed and assigned or rejected pursuant to an order authorizing but not directing Cuker to assume, assume and assign, or reject such Executory Contract or Unexpired Lease of the Bankruptcy Court entered prior to the Effective Date or (ii) assumed under this Plan. Any claims arising from the rejection of an Executory Contract or Unexpired Lease ("Rejection Clause") shall be classified as Class 4 under this Plan. The entry of the Confirmation Order by the Court shall constitute approval of such assumption or rejection pursuant to 11 U.S.C. Section 365(a) and 1123(b)(2). To this end, the debtor knows of only one pre-petition Executory Contract, a motor vehicle lease which will be assumed, and Cuker has submitted a schedule of this sole contract (and cure amount) through confirmation of the Plan. There are no contracts Cuker is rejecting under the Plan.

**(iii) Section 1123(b)(3) (Settlement or Retention of Claims)**

A plan may provide for the settlement or adjustment of any claim or interest retention of any claim or interest belonging to the debtor. 11 U.S.C. § 1123(b)(3). Under Section VII(F) of the Plan, the Reorganized Debtor designated as the

representative of the Reorganized Debtor under Section 1123(b)(3) and shall have the right to assert or continue to assert, as applicable, any or all of the reserved claims, claim objections. Section VII(F) provides for the preservation of certain Causes of Action. In addition, Section VII(J) provides that the Court shall retain jurisdiction over Causes of Action of the Reorganized Debtors.

**(iv) Section 1123(b)(6) (Provisions Not Inconsistent with The Bankruptcy Code)**

A plan may contain other appropriate provisions provided that such provisions are not inconsistent with the Bankruptcy Code. The Plan contains other such provisions, for example, provisions relating to procedures regarding disputed claims and claims objections (Section V(D)) and the Court's retention of jurisdiction on various matters (Section VII(J)). These provisions are appropriate provisions pursuant to Section 1123(b)(6) that do not violate the Bankruptcy Code.

In sum, the Plan complies with the classification provisions of Section 1122, as well as the mandatory and permissive provisions of Section 1123.

**B. <u>Section 1129(a)(2) (Proponent Compliance with Title 11)</u>**

Section 1129(a)(2) requires that the proponent of a plan comply "with the applicable provisions of this title." 11 U.S.C. § 1129(a)(2). Whereas Section 1129(a)(1) focuses on the form and content of a plan itself, Section 1129(a)(2) is concerned with the applicable activities of a plan proponent under the Bankruptcy Code. See *In re Downtown Inv. Club, LLP*, 89 B.R. 59, 65 (9th Cir. BAP 1988) ("… a plan must comply with Bankruptcy Code § 1129. Section 1129(a)(2) in turn requires that the proponent of the plan complies with the applicable provisions of Title 11.").

The Debtor duly complied with the Court's directive to prepare and file, and the Court approved, the Debtor's Disclosure Statement in this case. The requirement of a court approved disclosure statement in this case takes on a different purpose since no solicitation of votes is sought in connection with confirmation.

Nevertheless, the Debtor transmits to creditors its Court-approved Disclosure Statement which provides information about the Debtor, the Chapter 11 case and the Plan.

Thus in the circumstances of this case, the requirement imposed by Section 1129(a)(2), that Cuker, as the plan proponent, has complied with all applicable provisions of Title 11, has been satisfied with respect to the general provisions of Title 11 and the particular provisions applicable to reorganization. Generally, Cuker has observed all requirements imposed on debtors in Chapter 11, timely filed operating reports, and status reports, observed requirements of obtaining approval of retention of counsel, borrowings, assumption of unexpired leases and many other matters. Similarly, Cuker has observed the specific requirements of the Code with respect to its reorganization, principally by forming and seeking proponent's 100% full payment (with interest) plan with the company's earnings, together with a loan by Aaron Cuker of the remainder of funds necessary to pay all creditors 100% of their claims.

Based upon the foregoing, the requirements of Section 1129(a)(2) of the Bankruptcy Code are satisfied.

**C. <u>Section 1129(a)(3) (Good Faith)</u>**

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The Ninth Circuit has held that, although the Bankruptcy Code does not define "good faith," "[a] plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code." *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1074 (9th Cir. 2002) (citing *In re Corey*, 892 F.2d 829, 835 (9th Cir. 1989)). "[F]or purposes of determining good faith under Section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Sylmar Plaza, L.P.*, 314 F.3d at 1074 (quoting *In re Madison Hotel Associates*, 749 F.2d

410, 425 (7th Cir. 1994)).

As noted by the court in *In re Stolrow's, Inc.,* 84 B.R. 167 (9th Cir. BAP 1988), good faith in proposing a plan of reorganization is assessed by the Bankruptcy Judge and viewed under the totality of the circumstances. *In re Jorgensen*, 66 B.R. 104, 108-09 (B.A.P. 9th Cir. 1986). Good faith requires a fundamental fairness in dealing with one's creditors. *Id.* at 109. The bankruptcy judge is in the best position to assess the good faith of the parties. *Id.*, at 172.

One factor held to be determinative of whether a plan has been proposed in good faith is whether or not the plan proponent has abided by all court orders. See *In re Coastal Equities, Inc.*, 33 B.R. 898, 906 (Bankr. S.D. Cal. 1983); *In re Victory Constr. Co.,* 9 B.R. 549, 559-560 (Bankr. C.D. Cal. 1981).

First, consistent with the overriding purpose of Chapter 11 of the Bankruptcy Code, the Plan is designed to allow Cuker to reorganize by paying in cash from earnings and with a loan from Cuker's CEO, Aaron Cuker, for the balance of funds to fully pay and provide for all creditors' claims and to retain sufficient liquidity and capital resources and to otherwise conduct its business. Atalla Decl. ¶¶2, 9 and 12. From the earliest days of this case, Cuker has consistently announced its intention to pay 100% of all allowed claims. If a creditor's claim is allowed, it is paid 100% and this is fair to both the creditor and to Cuker. See, *In re Stolrow's,* Inc., 84 B.R. at 172 (stating that good faith in proposing a plan "also requires a fundamental fairness in dealing with one's creditors"). In proposing the Plan, Cuker has complied with all Court orders. See Atalla Decl., ¶9. In summary, since filing this case, Cuker has diligently and in good faith pursued a course of action which would enable the allowed claims of creditors to get paid while helping to ensure Cuker's long-term commercial recovery through its continued commitment to its clients. *Id.* ¶12. Cuker has not proposed the Plan for any purpose that is prohibited by law. *Id.* ¶2. Accordingly, the Plan is proposed in good faith and the provisions of Section 1129(a)(3) have been met.

**D. <u>Section 1129(a)(4) (Disclosure of Payments)</u>**

Section 1129(a)(4) of the Bankruptcy Code requires that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. § 1129(a)(4). This statutory provision requires that fees promised or received in connection with or in contemplation of a Chapter 11 case by professionals in their representation of a debtor must be disclosed and subject to the court's review.

In this case, any payments made by Cuker to Professionals for services or for costs and expenses in, or in connection with, this Chapter 11 case, have been or will be disclosed to the Bankruptcy Court in applications for compensation of fees and reimbursement of expenses in accordance with the Bankruptcy Code and prior orders of this Court. While the Debtor has employed with Court approval (i) general Chapter 11 counsel and supplemental co-counsel (Solomon Ward and The Broken-Bench Law Firm, respectively), (ii) Special Contingency Counsel – PWSP (Prata Daley), (iii) Special Contingency Counsel – Wal-Mart Injunction (Prata Daley/Larson O'Brien) and (iv) Squar Milner, Accountants and Advisors. Only Solomon Ward, The Broken-Bench Law Firm and Squar Milner will be seeking payment for fees owed in connection with the Chapter 11 case for amounts incurred before the Effective Date of the Plan. The Debtor's Fourth Amended Plan of Reorganization dated September 15, 2020 provides that professionals' applications for allowance of fees shall be filed within 60 days of the Effective Date of the Plan and that special contingency counsel shall filed their applications for allowance of fees within 60 days following the completion of their respective matters. All payments for services or expenses in connection with the Plan and by Special Contingency Counsel will be submitted for approval. Accordingly, the Plan fully

complies with the requirements of Section 1129(a)(4) of the Bankruptcy Code.

**E. <u>Section 1129(a)(5) (Disclosure of Officers, Directors, and Insiders)</u>**

Section 1129(a)(5) of the Bankruptcy Code contains three requirements. First, pursuant to Section 1129(a)(5)(A)(i), the proponent of a plan must disclose "the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director [or] officer or a successor to the debtor under the plan." 11 U.S.C. § 1129(a)(5)(A)(i). The identities of the Reorganized Officers (Adel Atalla, Aaron Cuker and Lori O'Brien) are disclosed in Plan Section V(B).

Second, Section 1129(a)(5)(A)(ii) requires that the appointment of each such director or officer must be "consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1129(a)(5)(A)(ii). The Debtor's retention of its existing Officers has been conducted in good faith, is consistent with public policy, and satisfies this standard. See Atalla Decl, ¶12, 17.

Third, Section 1129(a)(5)(B) requires that the plan proponent disclose "the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider." 11 U.S.C. § 1129(a)(5)(B). Section 101(31)(B) of the Bankruptcy Code defines "insider," in the case of a corporation, to include directors, officers, persons in control of the debtor, partnerships in which the debtor is a general partner, general partners of the debtor, or relatives of any of the foregoing. The identity and compensation of any insiders of the Reorganized Debtor is disclosed in Section V(B) of the Plan. Thus, the requirements of Section 1129(a)(5) have been satisfied. The details of the compensation are set forth in the operating reports filed from time to time in the case.

**F. <u>Section 1129(a)(6) (Rate Changes)</u>**

Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission with jurisdiction over the rates of the debtor approve any rate changes provided in the plan. Cuker is not subject to any such regulations, and the Plan does

not provide for any rate changes. Section 1129(a)(6) therefore does not apply in this case.

**G. <u>Section 1129(a)(7) (Best Interests of Creditors Test)</u>**

The 'best interests of creditors' test set forth in Section 1129(a)(7) of the Bankruptcy Code requires each holder of a claim or equity interest in an impaired class to either (a) accept the plan, or (b) receive or retain property that is not worth less, as of the effective date of the plan, than the amount that the holder of the claim or interest would receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code. See *Ambanc*, 115 F.3d at 656. If applicable, the "best interests of Creditors" test is generally satisfied through a liquidation/recovery analysis. See, e.g., *In re Jartran, Inc*., 44 B.R. 331, 389-93 (Bankr. N.D. Ill. 1984).

Here, the 'best interest of creditors' test is inapplicable. Without any impaired classes, each holder of a claim has been "conclusively presumed" to accept the plan. Bankruptcy Code §1126(f). The best interest test is not implicated.

**H. <u>Section 1129(a)(8) (Acceptance or Unimpairment)</u>**

Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accepts the plan or is not impaired under the plan. 11 U.S.C. § 1129(a)(8). Whether a class has accepted the plan is determined by reference to Section 1126 of the Bankruptcy Code. 11 U.S.C. § 1126. Under Section 1126(f), any class which is not impaired under the plan is conclusively presumed to have accepted the plan. Here, all classes are unimpaired. Section 1129(a)(8) is satisfied. The unimpairment issue is addressed in detail at Section VIII.

**I. <u>Section 1129(a)(9) (Administrative and Priority Claims)</u>**

Section 1129(a)(9) of the Bankruptcy Code states the rules applicable to payment of those unsecured claims entitled to priority in distribution in bankruptcy cases. 11 U.S.C. § 1129(a)(9). The Plan provides for payment in full on the Effective Date, or as soon thereafter as is practicable, of all Allowed Administrative Expense Claims (i.e., Claims entitled to administrative priority under Sections

503(b) and 507(a)(2) of the Bankruptcy Code). See Plan §§IV(1)(a). The Plan therefore satisfies Sections 1129(a)(9)(A)-(B) of the Bankruptcy Code. The Debtor has no claimants under Sections 507(a)(3), (4), (5), (6) or (7). Atalla Decl. ¶17.

With respect to Claim arising under section 507(a)(8), the claims of governmental units for taxes, none of which assert a lien or security interest, the Plan provides for the payment of such claims (owed to the Internal Revenue Service and the California Franchise Tax Board) in full and in cash on the latter of (i) the Effective Date or (ii) on the date such claim is an allowed Claim, identically to the treatment provided to all general unsecured claims. Thus, Sections 1129(a)(9)(C) and (D) are satisfied.

**J. <u>Section 1129(a)(10) (Acceptance by One Impaired Class)</u>**

Section 1129(a)(10) is inapplicable to this Case; all classes are unimpaired. See Section VIII below about the impairment question.

**K. <u>Section 1129(a)(11) (Feasibility)</u>**

Section 1129(a)(11) of the Bankruptcy Code requires that, as a condition precedent to confirmation, the court determines that the plan is feasible. Specifically, the court must determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). The test in Section 1129(a)(11) requires the court to determine, among other things, whether the plan is workable and has a reasonable likelihood of success. *United States v. Energy Resources Co., Inc.*, 495 U.S. 545, 549 (1990); *In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986) (finding that plan met feasibility requirement under Section 1129(a)(11) where the debtor presented evidence demonstrating that the plan had a reasonable probability of success).

In essence, feasibility generally requires a reasonable probability that (1) there will be enough cash on hand on the effective date of the plan to pay all the claims

and expenses which are entitled to be paid on that date; and (2) there will be enough cash over the term of the plan to make the required payments thereunder such that the plan is not likely to be followed by liquidation. See, e.g., *In re Art & Architecture Books of the 21st Century*, No. 2:13-bk-141135-RK, 2016 Bankr. LEXIS 859, at *58 (Bankr. C.D. Cal. Mar. 18, 2016). The Plan easily satisfies both aspects.

First, Cuker has shown available cash to make all payments due on the effective Date or to reserve for such creditors whose claims are objected to before the Effective Date. Atalla Decl. ¶¶8-13. A total of $1,231,290 in available cash is shown to meet the obligations of all priority and unsecured Creditors. The only currently secured creditor in the case (Class 2) has asserted a lien upon cash funds held in a retainer and against the Debtor's malpractice claims asserted against PWSP.

Second, Cuker is still operating its business and is profitable and is likely to remain profitable in the future. Atalla Decl. ¶12. Cuker has fared well during the Pandemic and it is anticipated that Cuker will continue to profitably engage in business to serve its clients in the ordinary course of its business. *Id.*

The Plan provides for cash to most creditors immediately, is clearly workable and has a reasonable likelihood of success. Cuker has arranged contractually for Insiders' forbearance from assertion of claims or receipt of money (except for salary and customary benefits paid in the ordinary course of business) until all creditors' claims have been satisfied and has demonstrated what needs to be done for the Plan to be effectuated, implemented and performed. *See* Plan Section V. Cuker has demonstrated that there will be sufficient cash to make or provided for all required "Effective Date" payments. See Atalla Decl. ¶¶8-10.

Cuker has thus demonstrated that: (a) the Plan provides a feasible means of completing a reorganization of the Debtor's business; and (b) there is a reasonable prospect that Confirmation of the Plan is not likely to be followed by the Cuker's

liquidation, or need for Cuker's further financial reorganization. Accordingly, the Plan satisfies the standard of Section 1129(a)(11) of the Bankruptcy Code.

**L. Section 1129(a)(12) (Section 1930 Fees)**

Section 1129(a)(12) of the Bankruptcy Code requires a plan to provide that all fees payable under 28 U.S.C. § 1930 (consisting primarily of the quarterly fee to the United States Trustee) will be paid on the effective date of the plan. Section 6.14 of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930 on the Effective Date and until the liability for paying such fees ends under 28 U.S.C. § 1930(a)(6). See Plan § IV(A)(1)(a). The Plan therefore complies with Section 1129(a)(12) of the Bankruptcy Code.

**M. Section 1129(A)(13) (Retiree Benefits)**

Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continued payment of certain retiree benefits "for the duration of the period the debtor has obligated itself to provide such benefits." 11 U.S.C. § 1129(a)(13). Cuker does not have any retiree benefit obligations: this provision has been satisfied. See Atalla Decl. ¶ 8.

**N. Section 1129(a)(14) (Domestic Support Obligations)**

Section 1129(a)(14) of the Bankruptcy Code, is inapplicable as the Debtors are not required to pay any domestic support obligations. See Atalla Decl. ¶17.

**O. Section 1129(a)(15) (Individual Debtor Requirements)**

Section 1129(a)(15) of the Bankruptcy Code is inapplicable, as the Debtor is not an individual debtor.

**P. Section 1129(a)(16) (Transfers Under Plan)**

Section 1129(a)(16) of the Bankruptcy Code requires that any transfers of property under a plan be made in accordance with applicable non-bankruptcy law that governs the transfer of property by a corporation or trust that is not a moneyed, business or commercial corporation or trust. The Plan satisfies Section 1129(a)(16), as no property is being transferred under the Plan. See Atalla Decl. ¶17.

## VIII.

## THE PLAN DOES NOT IMPAIR ANY CLASS.

The Plan does not impair any class. The Plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(1). To the extent that a creditor will receive something different from what it would receive outside of a bankruptcy case, that difference results from an alteration of its rights *by the Code*, not by the Plan. The Plan is simply the vehicle for delivering on those rights.

The legal consequences of unimpairment are significant. Every class under the Plan is "conclusively presumed to have accepted the plan." Section 1126(f). The requirements of section 1129(a)(8) are therefore automatically satisfied, and section 1129(a)(10), addressing insider acceptance of a plan, does not apply. In addition, every holder of a claim or interest, not just the class itself, is conclusively presumed to have accepted the plan. Section 1129(a)(7) is therefore satisfied, without the Court having to consider the best-interest test of section 1129(a)(7)(A)(ii). And of course, since all creditors and interest-holders are deemed to have accepted the plan, there is no need to solicit their acceptances. Section 1126(f).

The Plan proposes to pay unsecured creditors interest on their claims at the rate of 2.69% per year through the effective date. That is the legal rate, the rate determined under 11 U.S.C. § 726(a)(5), 28 U.S.C. § 1961(a) (the applicable federal judgment rate), and *Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231 (9th Cir. 2002). That rate is generally lower than the rate to which a creditor may be entitled under its legal, equitable, and contractual *nonbankruptcy* rights. Pillsbury, for example, asserts a right to 10% interest. But that highlighted word, "nonbankruptcy," is not in section 1124. A plan may provide creditor with a lower interest rate, but it is not ***the plan*** that alters the creditor's rights. "Impairment" under section 1124(1) is a question about what the plan does, not a function of

provisions of the Bankruptcy Code.

The unimpairment interest rate was directly addressed recently in *In re PG&E Corp*., 610 B.R. 308 (Bankr. N.D. Cal. 2019). There, as here, the court was asked to determine the unimpairment rate—the federal judgment rate or other rates. After a thorough canvass of the issues, the court held that the unimpairment rate is the rate proposed in this Plan, the federal judgment rate under 28 U.S.C.§ 1961(a). All unsecured creditors in a solvent case —in chapter 7, in chapter 11, impaired, unimpaired —are entitled to the same rate postpetition. Because it is the Bankruptcy Code, not the plan, that compels that rate, there is no impairment under section 1124(1). *In re PG&E Corp*., 610 B.R. at 315–16.

The PG&E decision relies to some extent on the Ninth Circuit's decision in *Cardelucci*. *Cardelucci* did not expressly address the section 1124 question and the unsecured creditors urging a higher rate argued that *Cardelucci* was in not "binding." Although the *PG&E* court held that *Cardelucci* was in fact binding, the court stated, "Even if Cardelucci were not binding, the court would reach the same conclusion." 610 B.R. at 310. That's because the logic, structure, and policy behind the Bankruptcy Code that support a single, uniform rate in *Cardelucci* apply with equal force to unimpairment under section 1124(1).

Some of the losers in *PG&E* sought leave to appeal the interest-rate decision. *Ad Hoc Committee of Holders of Trade Claims v. PG&E Corp.*, 614 B.R. 344 (N.D. Cal. 2020 ("*PG&E 2*"). The district court declined to allow the interlocutory appeal. The district court agreed that *Cardelucci* "controls" the interest-rate issue. In the view of the district court, *Cardelucci* answers the question presented here, even if *Cardelucci* did not refer to impairment:

> Where a debtor in bankruptcy is solvent, an unsecured creditor is entitled to 'payment of interest at the legal rate from the date of the filing of the petition' prior to any distribution of remaining assets to the debtor.

PG&E 2, 614 B.R. at 355, quoting *Cardelucci*, 285 F.3d at 1234 (emphasis omitted).

The *PG&E* bankruptcy decision also placed weight on two Court of Appeals decisions that explicitly addressed the question of "impairment by Code" in the context of section 1124. In *Ultra Petroleum Corp. v. Ad Hoc Committee of Unsecured Creditors (In re Ultra Petroleum Corp.)*, 943 F.3d 758 (5th Cir. 2019), the Fifth Circuit remanded for further ruling by the bankruptcy court on the specific issues (a "make-whole" premium and the postpetition interest rate), but it specifically rejected the bankruptcy court's conclusion that unimpairment "requires that [creditors] receive all that they are entitled to under state law." *Ultra Petroleum*, 943 F.3d at 762, *quoting In re Ultra Petroleum Corp.*, 575 B.R. 361, 372 (Bankr. S.D. Tex. 2017). The Fifth Circuit dismissed that bankruptcy court's view:

> In reaching that conclusion, the bankruptcy court split from the only court of appeals to address the question, every reported bankruptcy court decision on the question, and the leading treatise discussing the question. We reverse and follow the monolithic mountain of authority holding the Code—not the reorganization plan—defines and limits the claim in these circumstances.

*Ultra Petroleum*, 943 F.3d at 760. As the Fifth Circuit points out, the cases are apparently unanimous. See also, *In re PI Enterprises (U.S.) Inc.*, 324 F.3d 197, 203 (3d Cir. 2003).

As far as Cuker can tell, no court has held that interest determined under nonbankruptcy rights, rather than the federal judgment rate, is required to avoid unimpairment under section 1124. The Plan here offers the required interest and leaves creditors unimpaired.

/ / /

/ / /

/ / /

/ / /

## IX.

## CONCLUSION

For the reasons stated above and based on the evidence presented herein and to be presented at the Confirmation Hearing, Cuker submits that the Plan satisfies all of the applicable requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and should be confirmed. Cuker, therefore, respectfully requests that the Court enter an order confirming the Plan and grant such further and other relief as is just and proper.

DATED: October 7, 2020

SOLOMON WARD SEIDENWURM & SMITH, LLP

By: /s/ Michael D. Breslauer
MICHAEL D. BRESLAUER
*Co-Counsel for Debtor-In-Possession And Plan Proponent*
CUKER INTERACTIVE, LLC

**PROOF OF SERVICE**

I, WENDY A. YONES, declare as follows:

I am employed in the County of San Diego, State of California; I am over the age of eighteen years and am not a party to this action; my business address is Solomon Ward Seidenwurm & Smith, LLP, 401 B Street, Suite 1200, San Diego, CA 92101, in said County and State. On October 7, 2020, I served the following document(s):

**DEBTOR'S MOTION TO CONFIRM FOURTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED SEPTEMBER 15, 2020; DECLARATION OF ADEL ATALLA; DECLARATION OF STACY ELLEDGE CHIANG**

on each of the interested parties as follows:

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**
Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On October 7, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **Robert R. Barnes robertbarn@outlook.com, phall@allenmatkins.com; bcrfilings@allenmatkins.com**
- **Michael D. Breslauer mbreslauer@swsslaw.com, wyones@swsslaw.com**
- **K. Todd Curry tcurry@currylegal.com**
- **Jonathan S. Dabbieri dabbieri@sullivanhill.com, hill@sullivanhill.com; bkstaff@sullivanhill.com; vidovich@ecf.inforuptcy.com; dabbieri@ecf.inforuptcy.com**
- **Peter L. Duncan peterd@psdslaw.com, bonniec@psdslaw.com**
- **Michael T. O'Halloran mto@debtsd.com, vh@debtsd.com**
- **David Ortiz david.a.ortiz@usdoj.gov, USTP.REGION15@USDOJ.GOV; tiffany.l.carroll@usdoj.gov; abram.s.feuerstein@usdoj.gov**
- **Heather L. Rosing HRosing@Klinedinstlaw.com, mruiz@klinedinstlaw.com**
- **Gerald N. Sims jerrys@psdslaw.com, bonniec@psdslaw.com**
- **United States Trustee ustp.region15@usdoj.gov**
- **Alan Vanderhoff alan.vanderhoff@vanderhofflaw.com, alanvanderhoff@cox.net**
- **Matthew S. Walker matthew.walker@pillsburylaw.com, renee.evans@pillsburylaw.com**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 7, 2020

By: /s/ Wendy A. Yones
WENDY A. YONES