MICHAEL D. BRESLAUER [SBN 110259]
mbreslauer@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
Telephone (619) 231-0303
Facsimile (619) 231-4755

ROBERT R. BARNES [SBN 144881]
robertbarn@outlook.com
THE BROKEN-BENCH LAW FIRM
10982 Poblado Road, No. 1621
San Diego, California 92127-5327
Telephone: (619) 218-0520

*Co-Counsel for Debtor-In-Possession*
*And Plan Proponent*
CUKER INTERACTIVE, LLC

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>CUKER INTERACTIVE, LLC,<br><br>Debtor. | CASE NO. 18-07363-LA11<br><br>**DECLARATION OF ADEL ATALLA IN SUPPORT OF CONFIRMATION OF DEBTOR'S FOURTH AMENDED PLAN OF REORGANIZATION DATED SEPETMEBER 15, 2020**<br><br>Date: November 18, 2020<br>Time: 10:00 a.m.<br>Dept: Two (2)<br><br>Honorable Louise DeCarl Adler |

I, ADEL ATALLA, declare:

1. I am over 18 years of age and am the President of Cuker Interactive, LLC, a California limited liability company, debtor-in-possession in the above-captioned Chapter 11 case (the "Debtor" or "Cuker"). I have personal knowledge of the following facts and could and would competently testify thereto if called as a witness in this matter.

2. This Declaration is submitted to support confirmation of Cuker's Fourth Amended Plan of Reorganization dated September 15, 2020. The Plan embodies my

and Aaron Cuker's intention, professed since the commencement of this Chapter 11 case, that all creditors would be paid 100% of their claims. Cuker has operated successfully while under the Court's supervision, has amassed considerable net earnings, and is able (with an additional loan made by Aaron Cuker) to pay in full all of Cuker's creditors inclusive of the IRS and the California FTB, with interest. I believe that Cuker has not proposed its plan for any purpose that is prohibited by law.

3. Cuker is a progressive digital agency with the mission to help businesses adapt and thrive in the ever-changing landscape of digital commerce and marketing communication. Cuker has been recognized for its leadership and website user experience design, eCommerce platform development and digital marketing with over 175 industry awards.

4. Cuker was a pioneer of responsive website design and user experience – in addition to its many awards, in January 2014, Cuker was recognized for its leadership by the national Retail Federation (NRF), where it led panels on the application and implementation of responsive design in eCommerce. Wal-Mart representatives were in attendance at one of the panels and sought out Cuker to complete a responsive redesign of ASDA Grocery – the second largest grocery retailer in the UK and Europe.

5. Aaron Cuker is the Chief Executive and Creative Officer, and I am President and manage Cuker's growth and financial viability. I have worked for Cuker since its inception, and I have over 35 years' experience in business matters, following my graduation from the University of Illinois with a degree in accounting.

6. Wal-Mart engaged Cuker with the intention of obtaining Cuker's Trade Secrets and Know-how. Wal-Mart disguised over 40 employees of Wipro, a multi-billion dollar Indian company (with $8 billion in annual revenue) in order to gain knowledge and know-how that Cuker had developed over 8 years so that Wipro could learn-from, build-on and implement Cuker's Trade Secrets across Wal-Mart's global eCommerce infrastructure – which accounted for over $36 billion in revenue in 2019.

7. Wal-Mart's engagement of Cuker led to litigation in the Western District of Arkansas. The jury there found that Wal-Mart willfully and maliciously misappropriated Cuker's Trade Secrets and awarded Cuker damages of $12.4 Million. In addition, Cuker was granted injunctive relief for 4 stolen and misappropriated trade secrets. Cuker submitted total legal fees and costs of $4,778,700 to the District Court. In his final order and decision, the District Court Judge reduced Cuker's $12.4 Million award to $745,021[1], disallowed three of Cuker's misappropriated Trade Secrets as a basis for damages[2], and awarded Cuker legal fees and costs of $2,263,962[3] and sanctions of $400,299 against Wal-Mart for their conduct in the case.

8. Facing this devasting outcome and which Cuker believes resulted from their negligence, the Henry Law Firm ("HLF") and Pillsbury Winthrop Shaw Pittman LLP ("PWSP") (and each having pressed forward to assert liens against the Wal-Mart Amended Judgment of $3,409,282) rushed to sue Cuker with the intention of pushing Cuker out of business to avoid answering Cuker's claims of legal malpractice. This forced Cuker to both defend itself against HLF and PWSP while also pursuing Cuker's appeal in the Wal-Mart case, requiring Cuker to spend more than $800,000 in additional fees. This became unsustainable, Cuker needed a break and a breathing spell, and this Chapter 11 case followed.

9. The benefits of Chapter 11 provided the needed breathing space, essential to stabilize Cuker's business and generate operating profits to fund its reorganization plan. To maximize the assets of the estate, Cuker pursued and

---

[1] Cuker filed a motion to be allowed to take the depositions of Wipro employees that worked on the project. Wal-Mart objected and the District Court Judge granted Cuker's motion over that objection. Yet, HLF and PWSP failed to follow through and gather evidence to prove Cuker's misappropriation claim. In reducing the award, the District Court Judge cited that Cuker did not show **who** at Wipro did **what** in order to support Cuker's damages calculations.

[2] In disallowing 3 of Cuker's trade secrets, the District Court Judge determined that Cuker did not provide evidence that it took reasonable steps efforts to protect 3 of the 4 trades secrets. Unfortunately, the evidence existed but Cuker's counsel, PWSP and HLF, failed to appropriately introduce the evidence at trial.

[3] HLF submitted total legal fees and costs of $4,778,700 to the District Court on May 24, 2017. HLF and PWSP claim an additional $410,000 for their post-trial motions, briefed and argued from July through December 2017, and which were never submitted to the District Court as a part of Cuker's fees, bringing the total fees and cost sought to $5.18 Million.

concluded the Wal-Mart appeal[4], which yielded over $3.55 Million. Following this Court's Order approving a stipulation establishing a debtor-in-possession segregated account (the "Segregated Account"), Wal-Mart on March 20, 2020 paid to Cuker $3,551,088.47 as the money damages owed under the District Court's Amended Judgment. Cuker reached settlements approved by the Bankruptcy Court with both HLF and Shults & Adams, and as of September 30, 2020, there is $1,968,616.35 in the Segregated Account.

10. Following Cuker's Chapter 11 filing, Cuker has timely observed all operating requirements imposed upon debtors in Chapter 11 both by the Bankruptcy Code, local rules and by the requirements of the United States Trustee. Cuker has timely and fully complied with all bankruptcy Court Orders. Cuker looks forward to having its Plan approved. Cuker and its ultimate owners, Aaron Cuker, and me, have both operated the business and proposed Cuker's plan in good faith, to repay in full all debts which are legitimately due and owing.

11. Cuker's goal of payment of 100% of all creditors' claim has not wavered from the first days following the Chapter 11 filing, and that goal is now embodied in Cuker's Fourth Amended Plan of Reorganization dated September 15, 2020. Attached as **Exhibit F** to the Declaration of Stacy Elledge Chiang ("Chiang Dec."), which is being filed along with this declaration, is a matrix showing all creditors with allowed or potentially allowable claims. If a creditor was scheduled as "contingent," "disputed" or "unliquidated," and did not file a proof of claim, that creditor is not on the matrix. The matrix was prepared by Cuker's counsel at my direction and with revisions performed by Cuker's consultant, Stacy Elledge Chiang. The matrix is based upon the claims listed and filed and the calculation of interest at the legal rate of 2.69% for each creditor from the Petition Date to the estimated Effective Date of the Plan. For the creditors whose claims are subject to planned objection, interest from the

---

[4] Cuker quickly arranged to retain the services of its pre-bankruptcy appellate counsel, Robins Kaplan, arranged with court approval to obtain a post-petition unsecured loan (since repaid) of $100,000 payable to Robins Kaplan and stipulated to lift the automatic stay to provide for the prosecution of the Eighth Circuit appeal.

estimated Effective Date to the estimated date of resolution is added at the creditor's asserted non-bankruptcy law interest rate.

12. All operating reports have been timely filed. Total post-bankruptcy net gains from operations are $1,569,573 through August 31, 2020. I believe, based on my knowledge of Cuker's business, its past performance (both prior to and during the pandemic) and the absence of any known obstacles in Cuker's path, that Cuker will continue to pay its debts incurred in the ordinary course of its business, and will remain economically viable and profitable for the foreseeable future.

13. Given Cuker's steady and impressive performance while in Chapter 11, there is now held in a debtor-in-possession account at US Bank (Account No. xxxxxxxx6188, the sum $1,015,824 and the availability of additional funds in a line of credit available to Aaron Cuker in the sum of $200,000.00 to be loaned to Cuker on or before the Effective Date of the Plan. True and correct copies of Cuker's Bank balance for Account No. xxxxxxxx6188, a screen shot showing Aaron Cuker's line of credit and the balance in the Wal-Mart Judgment Segregated Account are attached hereto as **Exhibits 1, 2 and 3**, respectively.

14. Each of the insiders owed money from Cuker (Aaron Cuker and Patricia Atalla; I have withdrawn my claim following Cuker's settlement and payment of the HLF claim) have agreed contractually to forebear from asserting claims against Cuker or receiving any money or property from Cuker (other than regular salary and related benefits payable to the Insiders in the ordinary course of business and as previously approved by the Bankruptcy Court) until all other creditor claims have been paid under the Plan. Those agreements also toll the statute of limitations for commencement of any possible avoidance actions against them for a year. True and correct copies of the Forbearance Agreements signed by the insiders are collectively attached hereto as **Exhibit 4**.

15. Cuker continues to remain in business and operate in the ordinary course. Going forward Cuker, in good faith, will continue to be guided by its officers, Aaron

Cuker (CEO), me (President) and Lori O'Brien (CFO). As of the estimated Effective Date, all Cuker insiders will be compensated at the same compensation as authorized by the Court. Cuker currently has 25 employees who all to some extent are working remotely in light of the COVID-19 Pandemic. In 2020, even in light of the headwind of the pandemic, Cuker remained profitable and I believe will remain profitable in the future. Cuker still enjoys great relationships with its customers, all of whom have engaged Cuker's services since the Petition Date.

16. There is only one as-yet uncompleted pre-petition contract which is assumed under Cuker's Plan. It is an automobile lease with ACAR Leasing for a Chevrolet Tahoe, and it runs through March 2021. Prior to the Bankruptcy filing, Cuker made all the payments due under the ACAR lease. From and after the Bankruptcy filing Aaron Cuker made all the payments under the ACAR Lease. As of the Petition Date, there were no payments due under the Lease and as of this date there are no past due payments or defaults under the Lease. I am informed from conversations with Aaron Cuker that he will continue to make the payments.

17. Cuker intends to object to a limited number of claims, each of which (with the exception of an objection to the Claim of the Wolfe Law Group) is a carry-over from the disastrous experience Cuker had in its litigation with Wal-Mart. At this time, these carry-over objections are PWSP, Torrey Partners and Modus. Cuker is already proceeding with arbitration of PWSP's Claims and Cuker's counterclaims, and Cuker has filed a "placeholder" objection to the PWSP Claim, pending the arbitration. The Wolfe and Modus objections have been filed and the Torrey Partners objection will be filed shortly, and before the confirmation hearing date. I have experience with litigation and working with lawyers, at Cuker and elsewhere. Based on that experience and the fact that the objections will be in process before November 18, 2020, the time and cost estimates in the projections for completing the objections are reasonable.

18. For purposes of confirmation I confirm the following: (i) Cuker has no retiree benefit obligations; (ii) Cuker owes no domestic support obligations; (iii) no property other than payment to creditors is transferred under the Plan; (iv) All Cuker's secured, unsecured and tax claims are paid in full under Plan; (v) Cuker has on hand and available in cash all payments required to be paid or segregated as of the Effective Date of the Plan; (vi) Aaron Cuker, Lori O'Brien and I will remain as officers of the Debtor following confirmation, in good faith and not in any way inconsistent with public policy; (vii) I am unaware of any claims by any persons or entities which are described under Bankruptcy Code Sections 507(a)(3), (4), (5), (6) or (7); and (viii) Cuker is current in payment of all its obligations owed in the ordinary course of business and except for Cuker's Chapter 11 counsel, I am aware of no administrative claims against Cuker held by any person or firm.

19. I wish to correct a minor error by one of Cuker's attorneys in drafting Cuker's Disclosure Statement regarding the advances made by Patricia to Cuker Design, Inc., Cuker's sole member. The First Amended Disclosure Statement (originally filed on September 15, 2020, Dkt. No. 390) at pages 29-30 recites that all money advanced by Patricia in 2013-2014, which is the basis for her claim, was either transferred to Cuker Design and then to Cuker or was transferred from Patricia directly to Cuker. The point was that Cuker (i.e., the debtor) received the benefit of the funds. Although that general point is correct, the attorney did not get the details precise. I now recall that for several months in 2013-2014, Cuker Design paid the salaries owed by Cuker to me and Aaron Cuker directly to us with the funds advanced by Patricia. Accordingly, a more correct statement would be that all advances made by Patricia to Cuker Design, Inc. were either transferred to Cuker Interactive or were used by Cuker Design to pay obligations owed by Cuker Interactive, that is, Cuker Interactive received the ultimate benefit.

20. Our intention is to pay all allowed claims 100% with interest as instructed by the Court and to use the process available to us where appropriate to

object to creditors' claims we believe are mis-stated or not owed. We wish only to provide for 100% payment of properly allowable claims and move on to focus on our growing and successful business. Cuker is profoundly grateful for the Court's support over the past twenty-two months to enable Cuker to reach a successful conclusion and resolution of this Chapter 11 case.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct of my own personal knowledge and was executed this 7th day of October 2020 at San Diego, California.

/s/ Adel Atalla
ADEL ATALLA

# EXHIBIT 1

usbank

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

7292 TRN S Y ST01

**Business Statement**
Account Number:
6188
Statement Period:
Sep 17, 2020
through
Sep 30, 2020

Page 1 of 2

000127799 01 SP 0.500 000638593164625 P N
ESTATE OF CUKER INTERACTIVE LLC
DEBTOR IN POSSESSION
BANKRUPTCY CASE # 18-07363-11
5600 AVENIDA ENCINAS STE 175
CARLSBAD CA 92008-4447

***To Contact U.S. Bank***

***24-Hour Business Solutions:*** *1-800-673-3555*

***U.S. Bank accepts Relay Calls***

***Internet:*** *usbank.com*

## NEWS FOR YOU

Scan here with your phone's camera to download the U.S. Bank Mobile App.

## INFORMATION YOU SHOULD KNOW

**Effective November 9, 2020** the ***"Your Deposit Account Agreement"*** booklet will include several updates and may affect your rights.

The main updates to note in the revised ***"Your Deposit Account Agreement"*** booklet sections and sub sections, include:

- Throughout the document, references to the Federal Regulation D (governing savings and/or money market withdrawal limitations) have been removed, as they are no longer applicable.
- In section "Withdrawal Rights, Ownership of Account, and Beneficiary Designation", sub section "Joint Account - With Survivorship", clarification on ownership type.
- In the "Dormant Accounts and Escheat" and "Time Deposit" sections, clarification on the state permitted process and cost structure for escheatment.
- Update to section "Types of Transactions", sub section "Account Access at Automated Teller Machines" regarding: You may access your Home Equity Line of Credit or Personal Line of Credit for balance inquiries and making a payment to the respective line of credit at the ATM. Customers with a Debit or ATM card that have accessed a Home Equity Line of Credit or a Personal Line of Credit through the expanded card access feature, cash withdrawals/advances and transferring from the Home Equity Line of Credit or Personal Line of Credit is no longer allowed.

Starting November 9th, you may pick up a copy at your local branch, view on usbank.com, or call 800.USBANKS (872.2657) to request a copy. If you have any questions, our bankers are available to help at your local branch. You can also call us at U.S. Bank 24-Hour Banking at 800.USBANKS (872.2657). We accept relay calls.

## U.S. BANK SILVER - BUSINESS CHECKING

***Member FDIC***

U.S. Bank National Association

**Account Numb** **-6188**

### Account Summary

| | # Items | | |
|---|---|---|---|
| Beginning Balance on Sep 17 | | $ | 0.00 |
| Other Deposits | 1 | | 1,015,824.00 |
| **Ending Balance on Sep 30, 2020** | | **$** | **1,015,824.00** |

Number of Days in Statement Period 14

### Other Deposits

| *Date* | *Description of Transaction* | | *Ref Number* | | *Amount* |
|---|---|---|---|---|---|
| Sep 17 | Branch Account Transfer | From Acco | 5468 | $ | 1,015,824.00 |
| | | | **Total Other Deposits** | **$** | **1,015,824.00** |

**EXHIBIT 1**

usbank

ESTATE OF CUKER INTERACTIVE LLC
DEBTOR IN POSSESSION
BANKRUPTCY CASE # 18-07363-11
5600 AVENIDA ENCINAS STE 175
CARLSBAD CA 92008-4447

**Business Statement**
Account Number:
; 6188
Statement Period:
Sep 17, 2020
through
Sep 30, 2020



## U.S. BANK SILVER - BUSINESS CHECKING (CONTINUED)

U.S. Bank National Association

**Account Numt -6188**

**Balance Summary**

| *Date* | *Ending Balance* |
| --- | --- |
| Sep 17 | 1,015,824.00 |

Balances only appear for days reflecting change.

**EXHIBIT 1**

# EXHIBIT 2

U.S. Bank - Account Dashboar ×

onlinebanking.usbank.com/USB/af(KLJurakW5tg4XCj9Ak)/AccountDashboard/Index/18/SEL

Hi, Aaron Messages 35 Locations

usbank | My Accounts | Transfers | Bill Payments | Send Money | Customer Service | Products & Services

Choose an Account | My Documents | My Controls

## Equity Line - 6973

Add Nickname

**Account Summary**

| | |
|---|---|
| Current Balance [1] | **$52,133.16** |
| Available Credit [2] | $219,021.51 |
| Minimum Payment Due [3] | $0.00 |
| Next Payment Date [4] | 11/01/2020 |

Manage My Payments | **Make a Payment**

**I'd Like to...**

**View**

Account Information

Full Account Number

**Take Action**

Pay a U.S. Bank Account

Go Paperless

Download Automatic Payment Form

Lost or Stolen Card/Check

EXHIBIT 2

# EXHIBIT 3

usbank

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

4614 TRN S Y ST01

**Business Statement**
Account Number:
6994
Statement Period:
Sep 1, 2020
through
Sep 30, 2020

Page 1 of 2

000020724 01 AV 0.389 000638593192000 P Y
ESTATE OF CUKER INTERACTIVE LLC
DEBTOR IN POSSESSION
BANKRUPTCY CASE # 18-07363-11
5600 AVENIDA ENCINAS STE 175
CARLSBAD CA 92008-4447

***To Contact U.S. Bank***

***24-Hour Business Solutions:*** *1-800-673-3555*

***U.S. Bank accepts Relay Calls***

***Internet:*** *usbank.com*

## NEWS FOR YOU

Scan here with your phone's camera to download the U.S. Bank Mobile App.

## INFORMATION YOU SHOULD KNOW

**Effective November 9, 2020** the ***"Your Deposit Account Agreement"*** booklet will include several updates and may affect your rights.

The main updates to note in the revised ***"Your Deposit Account Agreement"*** booklet sections and sub sections, include:

- Throughout the document, references to the Federal Regulation D (governing savings and/or money market withdrawal limitations) have been removed, as they are no longer applicable.
- In section "Withdrawal Rights, Ownership of Account, and Beneficiary Designation", sub section "Joint Account - With Survivorship", clarification on ownership type.
- In the "Dormant Accounts and Escheat" and "Time Deposit" sections, clarification on the state permitted process and cost structure for escheatment.
- Update to section "Types of Transactions", sub section "Account Access at Automated Teller Machines" regarding: You may access your Home Equity Line of Credit or Personal Line of Credit for balance inquiries and making a payment to the respective line of credit at the ATM. Customers with a Debit or ATM card that have accessed a Home Equity Line of Credit or a Personal Line of Credit through the expanded card access feature, cash withdrawals/advances and transferring from the Home Equity Line of Credit or Personal Line of Credit is no longer allowed.

Starting November 9th, you may pick up a copy at your local branch, view on usbank.com, or call 800.USBANKS (872.2657) to request a copy. If you have any questions, our bankers are available to help at your local branch. You can also call us at U.S. Bank 24-Hour Banking at 800.USBANKS (872.2657). We accept relay calls.

## PLATINUM BUSINESS MONEY MARKET

***Member FDIC***

U.S. Bank National Association

**Account Numbe** **6994**

### Account Summary

| | # Items | | |
|---|---|---|---|
| Beginning Balance on Sep 1 | | $ | 2,203,567.79 |
| Other Deposits | 1 | | 83.56 |
| Other Withdrawals | 2 | | 235,035.00- |
| **Ending Balance on Sep 30, 2020** | | **$** | **1,968,616.35** |

| | | |
|---|---|---|
| Annual Percentage Yield Earned | | 0.04987% |
| Interest Earned this Period | $ | 83.56 |
| Interest Paid this Year | $ | 1,450.85 |
| Number of Days in Statement Period | | 30 |

### Other Deposits

| *Date* | *Description of Transaction* | *Ref Number* | | *Amount* |
|---|---|---|---|---|
| Sep 30 | Interest Paid | 3000005627 | $ | 83.56 |
| | | **Total Other Deposits** | **$** | **83.56** |

EXHIBIT 3

usbank

ESTATE OF CUKER INTERACTIVE LLC
DEBTOR IN POSSESSION
BANKRUPTCY CASE # 18-07363-11
5600 AVENIDA ENCINAS STE 175
CARLSBAD CA 92008-4447

**Business Statement**
Account Number:
6994
Statement Period:
Sep 1, 2020
through
Sep 30, 2020



## PLATINUM BUSINESS MONEY MARKET (CONTINUED)

U.S. Bank National Association

**Account Number -6994**

### Other Withdrawals

| Date | Description of Transaction | Ref Number | | Amount |
|---|---|---|---|---|
| Sep 10 | Wire Transfer Fee | 1000000986 | $ | 35.00- |
| Sep 10 | Wire Debit REF002976 BANK OZK LITTLE RO 200910027804 BNF=SHULTS LAW FIRM LLP OPERATING ACCT NO ADDRE | | | 235,000.00- |
| | **Total Other Withdrawals** | | **$** | **235,035.00-** |

**EXHIBIT 3**

# EXHIBIT 4

# FORBEARANCE AND TOLLING AGREEMENT – AARON CUKER

This Forbearance and Tolling Agreement ("Agreement") is entered into on August __, 2020, between Cuker Interactive, LLC, a California limited liability company ("Cuker") and Aaron Cuker ("Aaron") with reference to the following facts:

## RECITALS

A. Cuker commenced a case under Chapter 11 of the United States Bankruptcy Code on December 13, 2018 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court") as case No. 18-07363-LA11 (the "Bankruptcy Case").

B. Aaron asserts that he previously loaned money to Cuker and that the loan is secured by a security interest in substantially all the assets of Cuker. Aaron is a principal officer of Cuker and is a current Cuker employee earning wages for services rendered to Cuker in the ordinary course of Cuker's business. Aaron's security interest securing his loan was perfected within one year of the Petition Date.

C. Aaron filed Claim No. 9 in the Bankruptcy Case on April 25, 2019 as a secured claim (the "Aaron Claim").

D. Cuker will file its Third Amended Chapter 11 Plan of Reorganization on or before August 6, 2020 (the "Cuker Plan"). The Cuker Plan will (i) provide for payment of all claims in full on the later of (a) the Effective Date (as defined in the Cuker Plan) or (b) the date that a claim becomes an Allowed Claim (as defined in the Cuker Plan) and (ii) leave unaltered all of Aaron's legal, equitable and contractual rights under the Aaron Claim.

E. Both Cuker and Aaron anticipate that the time for payment of all claims will likely be after December 13, 2020, and therefore beyond the time for Cuker, as debtor in possession or otherwise, or other estate representative, to file an avoidance complaint or commence an action in the Bankruptcy Case to challenge the secured status of the Aaron Claim as preferential or otherwise.

F. Aaron wishes to agree to the terms of this Agreement as set forth herein.

## AGREEMENT

NOW, THEREFORE, for and in consideration of the above Recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Recitals Incorporated. The Recitals are true and correct and are hereby incorporated into and made a part of this Agreement.



**EXHIBIT 4**

2. Forbearance by Aaron. Aaron hereby agrees that upon the entry of an order of the Bankruptcy Court confirming the Cuker Plan (or any other Plan proposed by Cuker at a time when Cuker is controlled, directly or indirectly, by Aaron and Adel Atalla, he will forbear from taking any action to (i) collect, demand, sue or otherwise enforce his rights as a creditor holding the Aaron Claim, or (ii) receive any money or property paid by Cuker on account of the Aaron Claim and will not accept any such money or property until, with respect to either of subsections (i) and (ii) of this paragraph, all other Allowed claims asserted by Creditors of Cuker are paid under the Cuker Plan. For clarity, nothing in this Agreement shall impede or inhibit Cuker from paying or Aaron from receiving when due and payable regular salary and benefits paid to him as a Cuker employee.

3. Creditors as Third-Party Beneficiaries. Cuker's creditors provided for under the Cuker Plan are intended third-party beneficiaries of this Agreement and shall upon Aaron's default hereunder be entitled to enforce its terms.

4. Avoidance Actions Tolled. The periods set forth in Bankruptcy Code Section 546(a) shall be tolled and extended with respect to any action (including an objection to claim) brought regarding the Aaron Claim through the earlier of (i) December 13, 2021, or (ii) the date which is sixty (60) days after the payment of all Creditors' Allowed Claims under the Cuker Plan.

5. Aaron Claim Unaffected. Except as provided herein, this Agreement shall not be construed to limit, modify, or amend the Aaron Claim.

6. Integration. This Agreement is a fully integrated agreement. There are no other agreements, written or oral, between the parties respecting forbearance, and all prior negotiations of the parties on such subject are merged herein. This Agreement shall bind, and inure to the benefit of, the parties' respective successors and assigns.

7. No Modifications. This Agreement may be modified only by a written agreement signed by the parties hereto.

8. No Further Forbearance. This Agreement shall not constitute Aaron's agreement to grant additional forbearance or tolling periods, or further extend the time for payment of the Aaron Claim, none of which Aaron agrees or has agreed to do, and all of which matters are in Aaron's sole and absolute discretion.

9. Presentation to the Bankruptcy Court. The parties understand that this Agreement will be presented to the Bankruptcy Court concurrently with confirmation proceedings of the Cuker Plan.

10. Applicable Law. This Agreement is entered into at San Diego, California and shall be enforced, construed and interpreted in accordance with the laws of the State of California and shall be enforced in the Bankruptcy Court.

11. Availability of Counsel. Aaron acknowledges that, before signing this Agreement, he has been advised and given the opportunity to seek independent legal advice from his own attorneys with respect to the advisability of making the agreements provided for herein.

CUKER INTERACTIVE, LLC
a California limited liability company
Debtor in Possession

By: ______________________
Its: PRESIDENT

______________________
AARON CUKER, individually



**EXHIBIT 4**

# FORBEARANCE AND TOLLING AGREEMENT – PATRICIA ATALLA

This Forbearance and Tolling Agreement ("Agreement") is entered into on August __, 2020, between Cuker Interactive, LLC, a California limited liability company ("Cuker") and Patricia Atalla ("Patricia") with reference to the following facts:

## RECITALS

A. Cuker commenced a case under Chapter 11 of the United States Bankruptcy Code on December 13, 2018 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court") as case No. 18-07363-LA11 (the "Bankruptcy Case").

B. Patricia asserts that she previously loaned money to Cuker and to Cuker Design, Inc. and that all such advances are guarantied by Cuker and secured by a security interest in substantially all the assets of Cuker. Patricia is a current Cuker employee earning wages for services rendered to Cuker in the ordinary course of Cuker's business. Patricia's security interest securing the advances was perfected within one year of the Petition Date.

C. Patricia filed Claim No. 15 in the Bankruptcy Case on May 1, 2019 as a secured claim (the "Patricia Claim").

D. Cuker will file its Third Amended Chapter 11 Plan of Reorganization on or before August 6, 2020 (the "Cuker Plan"). The Cuker Plan will (i) provide for payment of all claims in full on the later of (a) the Effective Date (as defined in the Cuker Plan) or (b) the date that a claim becomes an Allowed Claim (as defined in the Cuker Plan) and (ii) leave unaltered all of Patricia's legal, equitable and contractual rights under the Patricia Claim.

E. Both Cuker and Patricia anticipate that the time for payment of all claims will likely be after December 13, 2020, and therefore beyond the time for Cuker, as debtor in possession or otherwise, or other estate representative, to file an avoidance complaint or commence an action in the Bankruptcy Case to challenge the secured status of the Patricia Claim as preferential or otherwise.

F. Patricia wishes to agree to the terms of this Agreement as set forth herein.

## AGREEMENT

NOW, THEREFORE, for and in consideration of the above Recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:



**EXHIBIT 4**

1. Recitals Incorporated. The Recitals are true and correct and are hereby incorporated into and made a part of this Agreement.

2. Forbearance by Patricia. Patricia hereby agrees that upon the entry of an order of the Bankruptcy Court confirming the Cuker Plan (or any other Plan proposed by Cuker at a time when Cuker is controlled, directly or indirectly, by Aaron Cuker and Adel Atalla, she will forbear from taking any action to (i) collect, demand, sue or otherwise enforce her rights as a creditor holding the Patricia Claim, or (ii) receive any money or property paid by Cuker on account of the Patricia Claim and will not accept any such money or property until, with respect to either of subsections (i) and (ii) of this paragraph, all other Allowed claims asserted by Creditors of Cuker are paid under the Cuker Plan. For clarity, nothing in this Agreement shall impede or inhibit Cuker from paying or Patricia from receiving when due and payable regular salary and benefits paid to her as a Cuker employee.

3. Creditors as Third-Party Beneficiaries. Cuker's creditors provided for under the Cuker Plan are intended third-party beneficiaries of this Agreement and shall upon Patricia's default hereunder be entitled to enforce its terms.

4. Avoidance Actions Tolled. The periods set forth in Bankruptcy Code Section 546(a) shall be tolled and extended with respect to any action (including an objection to claim) brought regarding the Patricia Claim through the earlier of (i) December 13, 2021, or (ii) the date which is sixty (60) days after the payment of all Creditors' Allowed Claims under the Cuker Plan.

5. Patricia Claim Unaffected. Except as provided herein, this Agreement shall not be construed to limit, modify, or amend the Patricia Claim.

6. Integration. This Agreement is a fully integrated agreement. There are no other agreements, written or oral, between the parties respecting forbearance, and all prior negotiations of the parties on such subject are merged herein. This Agreement shall bind, and inure to the benefit of, the parties' respective successors and assigns.

7. No Modifications. This Agreement may be modified only by a written agreement signed by the parties hereto.

8. No Further Forbearance. This Agreement shall not constitute Patricia's agreement to grant additional forbearance or tolling periods, or further extend the time for payment of the Patricia Claim, none of which Patricia agrees or has agreed to do, and all of which matters are in Patricia's sole and absolute discretion.

9. Presentation to the Bankruptcy Court. The parties understand that this Agreement will be presented to the Bankruptcy Court concurrently with confirmation proceedings of the Cuker Plan.

10. Applicable Law. This Agreement is entered into at San Diego, California and shall be enforced, construed and interpreted in accordance with the laws of the State of California and shall be enforced in the Bankruptcy Court.

11. Availability of Counsel. Patricia acknowledges that, before signing this Agreement, she has been advised and given the opportunity to seek independent legal advice from her own attorneys with respect to the advisability of making the agreements provided for herein.

CUKER INTERACTIVE, LLC
a California limited liability company

By: ______________________
Its: CEO

______________________
PATRICIA ATALLA, individually