MICHAEL D. BRESLAUER [SBN 110259]
mbreslauer@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
Telephone: (619) 231-0303
Facsimile: (619) 231-4755

ROBERT R. BARNES [SBN 144881]
robertbarn@outlook.com
THE BROKEN-BENCH LAW FIRM
10982 Poblado Road, No. 1621
San Diego, CA 92127-5327
Telephone: (619) 218-0520

Attorneys for Debtor-In-Possession and Plan Proponent CUKER INTERACTIVE, LLC

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>CUKER INTERACTIVE, LLC,<br><br>Debtor. | CASE NO. 18-07363-LA11<br><br>**DECLARATION OF STACY ELLEDGE CHIANG REGARDING CONFIRMATION OF DEBTOR'S FOURTH AMENDED PLAN OF REORGANIZATION DATED SEPTEMBER 15, 2020**<br><br>Date: November 18, 2020<br>Time: 10:00 a.m.<br>Dept: Two (2)<br><br>Honorable Louise DeCarl Adler |

I, STACY ELLEDGE CHIANG, declare:

**I.**

**INTRODUCTION AND RETENTION MATTERS**

1. I have been retained by Cuker Interactive, LLC ("Debtor") in its bankruptcy case *In re: Cuker Interactive, LLC* to analyze the Fourth Amended Chapter 11 Plan of Reorganization ("Plan") and provide expert testimony on whether such Plan meets the "feasibility" requirements of 11 U.S.C. §1129(a)(11).

2. My firm was engaged as accountants to the Debtor in November 2019; the bankruptcy court entered an order approving my firm's employment on or about December 23, 2019. I am the accountant at Squar Milner LLP ("Squar Milner") responsible for directing Squar Milner's services performed in connection with this engagement. This declaration is intended to provide the status of our analyses, observations, and opinions to date.

3. My firm's policy is to invoice clients for efforts on their behalf based on hours worked applied against our applicable hourly rates. My hourly rate is $395. Other professionals employed by Squar Milner have hourly rates ranging from $50 to $675; those professionals who have performed services in connection with this matter have hourly rates ranging from $125 to $395. Our compensation in this matter is not dependent on my opinions, observations, or calculations. At a later date, Squar Milner will file a fee application requesting approval and payment of its services in connection with this matter.

## II.

## QUALIFICATIONS AND EXPERIENCE

4. I am a certified public accountant/certified in financial forensics and a certified insolvency and restructuring advisor employed by, and a partner in, the accounting firm of Squar Milner, which provides financial, tax, accounting and business consulting services to a wide variety of commercial and industrial clients including small to medium-sized public companies in addition to bankruptcy and receivership estates.

5. I have been employed as an accountant and consultant since 1993 and have provided accounting and/or related financial analysis and consulting services to many parties in cases throughout southern California, including trustees, receivers, debtors and creditors. Prior to joining Squar Milner, I was a director with LECG, a shareholder with Mack|Barclay, Inc., and a staff auditor at Arthur Andersen, LLP.

6. Attached at **Exhibit A** is a copy of my curriculum vitae, which summarizes my professional and educational background. Attached at **Exhibit B** is a summary, as best as can be practically summarized, of my past testimony experience for the period from 1995 to the present. I have not formally published any materials in the past ten years.

7. My opinions are generally based on my training, education and judgment, and in particular, my understanding of the accounting and operations of the Debtor described below based upon the information provided to Squar Milner to date in the course of this engagement.

8. I understand that because this case is ongoing, I may receive additional relevant information. Therefore, Squar Milner's analysis and my opinions are subject to refinement and revision based on the availability, production, and review of such additional relevant information. If I receive or discover additional, relevant information, I may make adjustments to the observations, calculations and opinions expressed in this declaration and its exhibits.

9. The views expressed in this declaration are those of the author and should not be construed as representing the positions of other professionals at Squar Milner. I have personal knowledge of the matters stated in this declaration and could competently testify to them if called upon to do so.

## III.

## CASE BACKGROUND

10. The Debtor is an award-winning digital advertising agency with expertise in responsive website design and user experience. Since 2014, the Debtor has been engaged in significant litigation with a former customer, Wal-Mart, which led to disputes with the Debtor's legal representation (for a more complete summary of the Debtor's history, please see the Plan and corresponding disclosure statement ("Disclosure Statement") (Dkt Nos. 389 and 390).

11. The Debtor ultimately filed for relief under Chapter 11 of the Bankruptcy Code on December 13, 2018 in the United States Bankruptcy Court of the Southern District of California. The Debtor has continued to operate as a Debtor-in-Possession. The Debtor is represented by bankruptcy counsel Solomon Ward Seidenwurm & Smith LLP and The Broken-Bench Law Firm (collectively, "Counsel".)

12. In connection with the Debtor's reorganization efforts, Counsel previously requested that I review and calculate interest on filed proofs of claims of creditors Pillsbury Winthrop Shaw Pittman LLP, Henry Law Firm and Shults & Adams LLP. Counsel also provided me with information regarding the Debtor's collateral/restricted bank account which holds the Wal-Mart proceeds and key dates and provisions of the Debtor's then-anticipated second amended plan of reorganization. I refer to and incorporate by this reference my previous declaration submitted in connection with Cuker's second amended plan of reorganization, filed on July 16, 2020 (Dkt No. 340-2).

## IV.

## SCOPE OF ANALYSIS

13. At the request of Counsel, and under my direction, Squar Milner professionals analyzed available information regarding the Debtor's postpetition accounting and financial results for the purposes of evaluating the Debtor's ability to successfully reorganize. In the course of our assignment, Counsel also requested Squar Milner review and assist with interest calculations for certain claims in addition to reviewing the Debtor's preliminary projections and developing additional projections incorporating provisions of the Plan.

## V.

## FOUNDATION FOR AND DEVELOPMENT OF ANALYSIS

14. The broad range of internally and externally prepared documents reviewed and considered to date in developing the observations, calculations and

opinions set forth in this declaration includes bankruptcy court filings, such as the bankruptcy schedules, statement of financial affairs, monthly operating reports, the Plan and corresponding attachments, claims register, proofs of claim, various motions and declarations, projections and accounting information provided by the Debtor and information provided by Counsel.

15. To the extent necessary, I have personally analyzed the Debtor's documents, books and records, and the documents filed in the bankruptcy court in the Debtor's Chapter 11 case in preparation of this declaration. Based on the results of my analysis to date, I have formulated opinions regarding the postpetition financial affairs of the Debtor. When analyzing financial affairs of debtors in bankruptcy cases, it is customary for accountants to rely on the documents, files and records of debtors. It is also customary to rely on such materials in formulating opinions regarding the financial affairs of debtors in bankruptcy cases. It has been my experience that the documents, files and records of bankruptcy debtors, when taken as a whole and analyzed, enable an experienced accountant to accurately portray the financial affairs of debtors.

## VI.

## ANALYSIS OF PLAN FEASIBILITY[1]

16. There are several factors typically reviewed when assessing feasibility. Bankruptcy Code §1129(a)(11) contains the so-called "feasibility" requirement. The bankruptcy court must determine that a plan of reorganization is feasible in the sense that confirmation will *not likely* be followed by liquidation or further reorganization not contemplated by the plan. In practice, it has also been suggested that a combination of the "good faith" requirements of Bankruptcy Code

[1] This declaration is not intended to be construed as legal argument but rather as support for my opinions on the subject matter. References to the Bankruptcy Code and case law are not intended to be legal interpretations and are provided solely for the purpose of indicating the source of the guidelines used to prepare my work product and form the basis of my opinions. Without such guidelines, it would be impossible to determine the quality and sufficiency of the evidence necessary to support such opinions.

§1129(a)(3) and the "adequate means of implementation" requirements of Bankruptcy Code §1129(a)(5) may be construed to mean that a plan must have a *reasonable chance* of providing the values promised therein. Therefore, a debtor must show by the preponderance of the evidence what is reasonable and likely under the circumstances.

17. In order to address the issue of plan feasibility, it is helpful to examine the standards by which a plan of reorganization may be deemed feasible. My understanding is that fundamental question is "whether the things which are to be done after confirmation can be done as a practical matter under the facts" (*In re Clarkson*, 767 F.2d 417, 420, (8th Cir. 1985)). One measure of feasibility is determined by analyzing whether the Debtor will be able to meet its obligations due by the Plan's effective date ("Effective Date") and thereafter to produce sufficient cash flow to operate its business <u>and</u> service its debts as proposed by the Plan.

18. Certain guidelines relating to the showing of plan feasibility have evolved out of case law. The *Clarkson* court enumerated several factors to consider, including adequacy of capital, earning power, and ability of management and likelihood of its continuation that I will discuss more fully below in the context of this case. While I understand that the *Clarkson* list may not be exhaustive, it represents reasonable determinants of plan feasibility.

**A. <u>Cash Available on Effective Date</u>**

19. The first task in any feasibility analysis is to show that a debtor will have sufficient cash available on the effective date to pay the administrative claims and any other payments on that date contemplated by its plan of reorganization.

20. For purposes of its Plan, the Debtor projected that its cash balance at the Effective Date would be approximately $3,068,800, comprised of $1,100,000 in unrestricted funds and $1,968,800 in restricted funds (the Wal-Mart proceeds). The Plan also provides for additional funding from Mr. Aaron Cuker in the amount of $200,000. Finally, creditor Wolfe Legal Group ("Wolfe") holds a retainer in the

amount of $61,765 which will be utilized to fund, at least in part, any allowed amount on the claim of Wolfe. Therefore, at the Effective Date, the Debtor projects it will have access to $3,300,565 in funds, which does not include ongoing net receipts generated in December 2020.

21. The Plan contemplates that the Debtor will have funds on hand for estimated administrative expenses at the Effective Date, all undisputed claims including interest, and a reserve for disputed claims including interest. **Exhibit C** is a summary of the reserves needed at Effective Date, comprised as follows: estimated administrative expenses at $326,000 at the Effective Date, allowed/undisputed claims including interest of $520,972 and disputed claims including interest of $2,300,031, for a total of $3,147,003.

22. Since the Debtor's September 2020 monthly operating report is not yet due and available, I requested month-end cash balance information from the Debtor. The Debtor informs me that its cash book balance at September 30, 2020 totals $3,370,165.61, and I reviewed two currently available bank statements for September 2020 that comprise most of that total cash balance. Based upon my review of the Debtor's recent monthly operating reports and my understanding of its ongoing operations, the Debtor's cash balance estimate at the Effective Date of $3,300,565 appears reasonable.

23. Therefore, based on available claims and financial data, it appears that the Debtor will have sufficient cash available on the Effective Date to pay administrative claims and undisputed claims as well as maintain its reserve for disputed claims as contemplated under the Plan.

**B. Adequacy of Capital**

24. Capital (or capital structure) refers to the mix of long-term debt and equity employed by an entity to meet its permanent financing needs. Generally, I review the components of a debtor's capital structure at the beginning of its bankruptcy case, the changes thereto during the pendency of the bankruptcy

proceedings along with an understanding of the likely capital structure as of the effective date and then assess the overall structure based on the proposed plan.

25. Based on my review of the Debtor's monthly operating reports, as a result of the Debtor's successful operational results combined with its receipt of the Wal-Mart funds during the pendency of its Chapter 11 case, the overall capital structure of the Debtor has substantially improved since case inception. As this case has progressed, the Debtor also resolved and/or paid some prepetition claims with bankruptcy court approval, thereby reducing its debt load. Attached at **Exhibit D** is a summary of several balance sheets reported by the Debtor on its monthly operating reports that shows increases in cash and equity and decreases in liabilities over the course of the case to date.

26. The Debtor typically pays its trade payables and ordinary business expenses as they come due. According to the most recently filed monthly operating report (August 2020), the Debtor had no current liabilities except the client prepaid marketing campaign expenses and its prepaid fees. The Debtor does not carry postpetition long-term debt. All other liabilities are prepetition claims that will be resolved through the Plan by mid-2021, with the exception of insider claims, that, while recorded on the Debtor's books and reflected on the monthly operating report balance sheets, will not be repaid until all other claims have been resolved and paid.

27. Therefore, based on the foregoing, I conclude that the Debtor's Plan demonstrates adequacy of capital for purposes of plan confirmation.

**C. <u>Earning Power</u>**

28. Earning power typically refers to a business' ability to generate profits from operations, and, in this context would be demonstrated by a debtor's ability to pay its claims distributions as proposed in its plan of reorganization over time in addition to its normal operating expenses. The credibility of any set of financial projections is based on prior actual performance, demonstrated ability to budget or forecast financial results accurately and the reasonableness of the assumptions upon

which projections are based.

29. In connection with the Debtor's reorganization efforts, my firm reviewed the Debtor's filed monthly operating reports, the Debtor's projections for 2020, the developing Plan and Disclosure Statement, and participated in discussions with Mr. Adel Atalla, the Debtor's President, and Counsel. I noted that as of August 31, 2020, the Debtor had reported total postpetition profits of $1,297,073 and has set aside significant cash savings to fund its Plan. Squar Milner developed the projection schedule attached hereto as **Exhibit E**. This projection forecasts monthly revenues at $322,500, monthly operating expenses of $250,000 and net income at $72,500, a monthly net income level that is lower than financial results reported in the Debtor's most recently filed monthly operating reports.

30. The projections include payments to creditors under the Plan according to estimated payment dates: administrative claims and undisputed claims (plus interest) at the Effective Date and disputed claims (plus interest) later in 2021. Under these projections, I believe that the Debtor will have cash available to make both regular operational expenditures as well as Plan disbursements such as claims and post-confirmation legal expenses.

31. In connection with reviewing the Debtor's estimates with respect to its projected claims payment stream, I utilized the Debtor's available claims summary along with claims and other information provided by Counsel in order to develop the interest calculations at **Exhibit F**. These calculations are then reflected in the claims distributions shown at Exhibit E.

32. Over the past several years, the Debtor has observed increasing demand for its services as the world has become more digitally based. Despite recent economic challenges faced by many small businesses during the COVID-19 pandemic in 2020, the Debtor has been able to maintain its revenues and manage its operational costs. It is anticipated that the Debtor will be able to continue to serve its clients profitably in the future.

33. Therefore, I believe the Debtor has demonstrated sufficient earning power on a go-forward basis for plan confirmation purposes.

**D. <u>Management</u>**

34. The Debtor is a closely held small business. The Debtor's Chief Executive Officer, Mr. Aaron Cuker, is an accomplished senior digital strategist who has been leading the Debtor's creative and marketing teams since the Debtor's inception. The Debtor's President, Mr. Adel Atalla, who has a background in finance, manages the Debtor's sales and financial matters, including oversight of budgeting, accounting, contract negotiations, banking, as well as public relations and all legal matters.

35. I understand that the Debtor's management team intends to remain in place for the foreseeable future. Based upon the operating results achieved during its Chapter 11 case in addition to its history of award-winning products, I believe management has demonstrated its capabilities in guiding and overseeing the Debtor's operations.

## VII.

## <u>CONCLUSION</u>

36. This Debtor has demonstrated during the life of this case its ability to continue generating substantial and consistent revenues and profits despite bankruptcy hardships and the uncertainties of a global pandemic. Based upon the foregoing, I believe that the proposed Plan is feasible.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct of my own personal knowledge and was executed this 7th day of October 2020 at San Diego, California.

/s/ Stacy Elledge Chiang
STACY ELLEDGE CHIANG

# EXHIBIT A

squarmilner
Certified Public Accountants
and Financial Advisors

# STACY ELLEDGE CHIANG
CPA/CFF, CIRA

**SQUAR MILNER LLP**
**2011 – Present**

Stacy Elledge Chiang is a partner in the Bankruptcy and Litigation Consulting Practice. Ms. Elledge has extensive experience providing financial analysis and consulting services primarily in the areas of insolvency and reorganization as well as other litigation and dispute matters. Her experience with receivership, chapter 11 and chapter 7 cases includes review and analysis of the Debtor's financial condition, investigation of claims and potential avoidable transfers, solvency analyses, forensic accounting and asset tracings, preparation of monthly operating reports, analyses of reorganization and liquidation plans and development of pleadings, reports and declarative testimony. Ms. Elledge serves various parties, including trustees, receivers, debtors, and creditors in cases throughout southern California. Additionally, Ms. Elledge previously provided auditing and accounting services for clients in various industries.

**LECG, LLC (2006 – 2011)**
Director

**MACK|BARCLAY INC. (1995 – 2006)**
Shareholder (2003)

**ARTHUR ANDERSEN LLP (1993 – 1995)**
Experienced Staff Analyst

**EDUCATION**
University of Illinois at Urbana-Champaign – Bachelor of Science (Highest Honors), Accountancy, 1993

**PROFESSIONAL CREDENTIALS & MEMBERSHIPS**
Certified Public Accountant, Illinois (1995), California (1996)
Certified in Financial Forensics
Certified Insolvency and Restructuring Advisor
(Zolfo, Cooper Gold Medal Award Recipient, AIRA, 1999)
American Institute of Certified Public Accountants
Association of Insolvency and Restructuring Advisors
California Bankruptcy Forum
San Diego Bankruptcy Forum (Treasurer, 1999 – 2001)
San Diego County Bar Association (Associate Member)

# EXHIBIT B

**Stacy Elledge Chiang, CPA/CFF, CIRA**
**Depositions, Mediation, Arbitration and Trial Testimony [1]**
**Page 1**

| Date | Case Name | Court Location | Testimony |
|---|---|---|---|
| 06/24/98 | In re: La Jolla Village Towers - 500 | SDCA USBC | Declaration |
| 09/23/98 | In re: La Jolla Village Towers - 500 | SDCA USBC | Declaration |
| 09/24/98 | In re: La Jolla Village Towers - 500 | SDCA USBC | Declaration (multiple) |
| 09/25/98 | In re: La Jolla Village Towers - 500 | SDCA USBC | Declaration (multiple) |
| 10/06/98 | In re: La Jolla Village Towers - 500 | SDCA USBC | Declaration (multiple) |
| 10/15/98 | In re: La Jolla Village Towers - 500 | SDCA USBC | Declaration (multiple) |
| 10/30/98 | In re: La Jolla Village Towers - 500 | SDCA USBC | Declaration |
| 11/03/98 | In re: La Jolla Village Towers - 500 | SDCA USBC | Declaration |
| 11/19/98 | In re: La Jolla Village Towers - 500 | SDCA USBC | Declaration |
| 12/17/98 | In re: La Jolla Village Towers - 500 | SDCA USBC | Declaration |
| 01/21/99 | In re: La Jolla Village Towers - 500 | SDCA USBC | Declaration |
| 07/12/02 | In re: Saul D. Wright | SDCA USBC | Examiner's Report |
| 12/16/02 | In re: Saul D. Wright | SDCA USBC | Declaration |
| 01/08/03 | Lao v. Woolley | San Diego Superior | Deposition |
| 01/28/03 | In re: Grafton Partners | SDCA USBC | Declaration |
| 09/17/03 | Grafton Partners, LP v. PwC, et al. | Alameda Superior | Deposition |
| 10/20/03 | Grafton Partners, LP v. PwC, et al. | Alameda Superior | Deposition |
| 11/04/03 | In re: Grafton Partners | SDCA USBC | Declaration |
| 11/04/03 | Kipperman v. Circle Trust | SDCA USBC | Declaration |
| 11/14/03 | Kipperman v. Circle Trust | SDCA USBC | Declaration |
| 08/13/04 | Kipperman v. Robert and Charron Thomas Trust | SDCA USBC | Declaration |
| 10/07/04 | In re: AE Yale Enterprises | SDCA USBC | Declaration |
| 12/14/04 | Damiani v. Haus, et al. | San Diego Superior | Declaration |
| 01/19/05 | Damiani v. Haus, et al. | San Diego Superior | Declaration |
| 03/10/05 | In re: Ramo Practice Management, Inc. | SDCA USBC | Declaration |
| 03/10/05 | In re: RM&M Practice Management, Inc. | SDCA USBC | Declaration |
| 04/01/05 | In re: Ramo Practice Management, Inc. | SDCA USBC | Declaration |
| 04/01/05 | In re: RM&M Practice Management, Inc. | SDCA USBC | Declaration |
| 04/20/05 | SEC v. Global Money Management, et al. | SDCA USDC | Declaration |
| 06/14/05 | In re: Global Money Management | SDCA USBC | Declaration |
| 06/22/05 | Kipperman v. Cohane Rafferty Securities, LLC | SDCA USBC | Declaration |
| 08/02/05 | Kipperman v. AdTech Systems, Inc. et al. | SDCA USBC | Declaration |
| 08/02/05 | Kipperman v. American Heritage, Inc. | SDCA USBC | Declaration |
| 08/02/05 | Kipperman v. Art Maas | SDCA USBC | Declaration |
| 08/02/05 | Kipperman v. BAS International, Inc. | SDCA USBC | Declaration |
| 08/02/05 | Kipperman v. Capital Markets, Corp. | SDCA USBC | Declaration |
| 08/02/05 | Kipperman v. Diversified Enterprise of South Florida | SDCA USBC | Declaration |
| 08/02/05 | Kipperman v. Medquick Supply, Inc. | SDCA USBC | Declaration |
| 08/02/05 | Kipperman v. North Star Leasing | SDCA USBC | Declaration |
| 08/02/05 | Kipperman v. RCMG, Inc., et al. | SDCA USBC | Declaration |

[1] Excludes declarations in support of employment/fee applications and other employment related matters.

| Date | Case Name | Court Location | Testimony |
|---|---|---|---|
| 08/02/05 | Kipperman v. Super Shrimp, Inc., et al. | SDCA USBC | Declaration |
| 09/23/05 | SEC v. Global Money Management, et al. | SDCA USDC | Declaration |
| 11/29/05 | In re: Commercial Money Center, Inc. | SDCA USBC | Declaration (multiple) |
| 12/01/05 | In re: Commercial Money Center, Inc. | SDCA USBC | Declaration |
| 01/04/06 | In re: Commercial Money Center, Inc. | SDCA USBC | Declaration |
| 04/14/06 | Kipperman v. Edward Quiroz | SDCA USBC | Declaration |
| 05/04/06 | Kipperman v. CitroBio | SDCA USBC | Declaration |
| 05/04/06 | Kipperman v. Baktec, Inc. | SDCA USBC | Declaration |
| 08/17/06 | Kipperman v. Jennifer Vance, et al. | SDCA USBC | Declaration |
| 08/17/06 | Kipperman v. Sterling Wayne Pirtle, et al. | SDCA USBC | Declaration |
| 08/17/06 | Kipperman v. Ronald Fisher, et al. | SDCA USBC | Declaration |
| 11/30/06 | Kipperman v. Cohane Rafferty Securities, LLC | SDCA USBC | Declaration |
| 05/16/07 | In re: Global Money Management | SDCA USBC | Declaration (multiple) |
| 06/27/07 | In re: Global Money Management | SDCA USBC | Declaration |
| 08/20/07 | In re: Global Money Management | SDCA USBC | Declaration |
| 09/05/07 | In re: Grafton Partners | SDCA USBC | Declaration |
| 10/05/07 | GMM v. George F. McDonnold | SDCA USDC | Declaration |
| 10/05/07 | GMM v. Steven B. McDonnold | SDCA USDC | Declaration |
| 10/10/07 | Kipperman v. Anthony & Morgan Surety Insurance | SDCA USBC | Declaration |
| 12/04/07 | Kipperman v. Anthony & Morgan Surety Insurance | SDCA USBC | Declaration |
| 09/18/08 | Kipperman v. Anthony & Morgan Surety Insurance | SDCA USBC | Declaration |
| 12/01/08 | GMM v. Paul Mugnaioni, et al. | SDCA USBC | Declaration |
| 05/21/09 | Zamel Enterprises, LP v. Al Eisman, et al. | San Diego Superior | Declaration |
| 02/22/10 | In re: Pacers, Inc. | SDCA USBC | Declaration |
| 03/12/10 | In re: Pacers, Inc. | SDCA USBC | Declaration |
| 06/24/11 | In re: Alreen Haeggquist | SDCA USBC | Declaration |
| 03/07/12 | Kipperman v. Eric Michael Segal | SDCA USBC | Declaration |
| 07/15/13 | Brent D. Rigby v. Frederick J. Hannan, et al. | Orange Superior | Deposition |
| 12/05/13 | In re: Barratt American Incorporated | SDCA USBC | Declaration |
| 07/28/14 | In re: Kim Laube and Kim Laube & Co., Inc. | CDCA USBC | Declaration |
| 09/04/14 | In re: Kim Laube and Kim Laube & Co., Inc. | CDCA USBC | Testimony |
| 09/22/14 | In re: MAM Restaurant Group, Inc. | SDCA USBC | Examiner's Report |
| 11/08/16 | In re: Mark Technologies Corporation | CDCA USBC | Declaration |
| 02/28/17 | In re: Menco Pacific, Inc. | CDCA USBC | Declaration |
| 03/17/17 | In re: Menco Pacific, Inc. | CDCA USBC | Declaration |
| 07/30/17 | Gladstone v. Omega Life Fund, LLC, et al. | SDCA USBC | Declaration |
| 08/02/17 | In re: Imagenetix, Inc. | SDCA USBC | Declaration |
| 09/21/17 | In re: Imagenetix, Inc. | SDCA USBC | Declaration |
| 10/30/17 | In re: Imagenetix, Inc. | SDCA USBC | Declaration |
| 12/04/17 | In re: Imagenetix, Inc. | SDCA USBC | Declaration |

[1] Excludes Declarations in support of employment/fee applications and other employment related matters.

| Date | Case Name | Court Location | Testimony |
|---|---|---|---|
| 01/16/18 | In re: Imagenetix, Inc. | SDCA USBC | Declaration |
| 01/24/18 | In re: Imagenetix, Inc. | SDCA USBC | Declaration |
| 05/24/18 | In re: San Diego Hospice & Palliative Care Corp. | SDCA USBC | Declaration |
| 08/16/18 | In re: San Diego Hospice & Palliative Care Corp. | SDCA USBC | Declaration |
| 07/01/20 | In re: Asset Resolution, LLC | Nevada USBC | Declaration |
| 07/16/20 | In re: Cuker Interactive, LLC | SDCA USBC | Declaration |

[1] Excludes Declarations in support of employment/fee applications and other employment related matters.

# EXHIBIT C

**In re: Cuker Interactive** **DRAFT**

**Summary of Cash Required for Reserves at Plan Effective Date**

| | | |
|---|---|---|
| Administrative expenses through Plan Effective Date | | |
| Solomon Ward Seidenwurm & Smith LLP | $ | 195,000 |
| The Broken-Bench Law Firm | | 36,000 |
| Squar Milner LLP | | 45,000 |
| Prata & Daley, LLP (out-of-pocket expenses) | | 50,000 |
| Larson O'Brien, LLP (out-of-pocket expenses) | | - |
| Clerk's office | | - |
| Office of the United States Trustee | | - |
| | | 326,000 |
| Undisputed claims, including interest, through projected payment date | | |
| Chuck Easttom | | 28,129 |
| Franchise Tax Board | | 4,038 |
| Husch Blackwell LLP | | 45,507 |
| Interior Plant Service, Inc. | | 150 |
| Internal Revenue Service | | 381,095 |
| Jan-Pro | | 421 |
| Lincoln Loop | | 8,436 |
| Resonant Legal Media LLC | | 53,196 |
| | | 520,972 |
| Disputed claims, including interest, through projected payment date | | |
| Modus eDiscovery, Inc. | | 18,959 |
| Pillsbury Winthrop Shaw Pittman LLP | | 1,789,472 |
| Torrey Partners, LLC | | 409,738 |
| Wolfe Legal Group | | 81,862 |
| | | 2,300,031 |
| | $ | 3,147,003 |

Notes:

*Sources* : Debtor's summary of claims in case and proofs of claim as filed with the court, other bankruptcy documents, post-judgment rate information from bankruptcy court website and Plan information per counsel.

# EXHIBIT D

**In re: Cuker Interactive, LLC** **DRAFT**

**Summary of Select Postpetition Balance Sheets from January 31, 2019 to August 31, 2020**

| | 01/31/19 [1] | 03/31/19 | 06/30/19 | 09/30/19 | 12/31/19 | 03/31/20 | 06/30/20 | 08/31/20 |
|---|---|---|---|---|---|---|---|---|
| Assets | | | | | | | | |
| Unrestricted cash | $ 283,721 | $ 424,621 | $ 635,254 | $ 633,608 | $ 781,573 | $ 693,424 | $ 1,077,096 | $ 1,472,202 |
| Restricted cash [2] | - | - | - | - | - | 3,551,214 | 3,552,163 | 2,203,568 |
| Other current assets | 12,128 | 58,671 | 39,921 | 111,128 | 76,191 | 312,654 | 287,505 | 179,908 |
| Net property, plant and equipment | 106,514 | 106,514 | 112,027 | 112,027 | 150,734 | 159,844 | 167,758 | 169,925 |
| Other assets | - | 1,300 | 1,000 | 700 | 400 | 100 | - | - |
| Total Assets | $ 402,363 | $ 591,106 | $ 788,202 | $ 857,463 | $ 1,008,898 | $ 4,717,236 | $ 5,084,522 | $ 4,025,603 |
| Liabilities | | | | | | | | |
| Postpetition liabilities | $ 211,852 | $ 330,066 | $ 313,066 | $ 139,003 | $ 198,275 | $ 140,327 | $ 270,248 | $ 361,419 |
| Prepetition liabilities | 4,731,438 | 4,731,438 | 4,731,438 | 4,731,438 | 4,731,438 | 4,731,438 | 4,731,438 | 3,382,599 |
| Total Liabilities | 4,943,290 | 5,061,504 | 5,044,504 | 4,870,441 | 4,929,713 | 4,871,765 | 5,001,686 | 3,744,018 |
| Equity | | | | | | | | |
| Postpetition profit (loss) | 63,117 | 97,540 | 311,486 | 554,810 | 646,987 | 862,058 | 1,098,474 | 1,297,073 |
| Prepetition owner's equity | (4,604,044) | (4,567,801) | (4,567,801) | (4,567,801) | (4,567,801) | (4,567,801) | (4,567,801) | (4,567,801) |
| Adjustments to equity | - | (137) | 13 | 13 | - | 3,551,214 | 3,552,163 | 3,552,313 |
| Total Equity | (4,540,927) | (4,470,398) | (4,256,302) | (4,012,978) | (3,920,814) | (154,529) | 82,836 | 281,585 |
| Total Liabilities and Equity | $ 402,363 | $ 591,106 | $ 788,202 | $ 857,463 | $ 1,008,899 | $ 4,717,236 | $ 5,084,522 | $ 4,025,603 |

Notes:

*Sources* : Monthly operating reports filed by the Debtor.

[1] Operating report reflects activities from December 14, 2018 through January 31, 2019.

[2] Balance in restricted funds account (Wal-Mart proceeds) at month-end.

**EXHIBIT D**

# EXHIBIT E

**In re: Cuker Interactive, LLC** DRAFT

**Summary of Post-Confirmation Projections**

| | 12/21/20 - 12/31/20 | Months Ended 01/31/21 | 02/28/21 | 03/31/21 | 04/30/21 | 05/31/21 | 06/30/21 | 07/31/21 | 08/31/21 | 09/30/21 | 10/31/21 | 11/30/21 | 12/31/21 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ***Income Statement Projections:*** | | | | | | | | | | | | | | |
| Projected revenues | $ 115,000 | $ 322,500 | $ 322,500 | $ 322,500 | $ 322,500 | $ 322,500 | $ 322,500 | $ 322,500 | $ 322,500 | $ 322,500 | $ 322,500 | $ 322,500 | $ 322,500 | $ 3,985,000 |
| Projected operating expenses: | | | | | | | | | | | | | | |
| Payroll - insiders | 19,500 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 679,500 |
| Payroll - other employees | 44,400 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 1,544,400 |
| Payroll taxes | 5,300 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 185,300 |
| Other taxes | 1,800 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 61,800 |
| Rent expense - real property | 5,300 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 185,300 |
| Insurance | 3,500 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 123,500 |
| Telephone and utilities | 500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,500 |
| Repairs and maintenance | 300 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 9,900 |
| Travel and entertainment | 200 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,600 |
| Miscellaneous operating expenses | 7,800 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 271,800 |
| | 88,600 | 250,000 | 250,000 | 250,000 | 250,000 | 250,000 | 250,000 | 250,000 | 250,000 | 250,000 | 250,000 | 250,000 | 250,000 | 3,088,600 |
| Projected net income from operations | $ 26,400 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 896,400 |
| ***Plan Funding Projections:*** | | | | | | | | | | | | | | |
| Plan receipts: | | | | | | | | | | | | | | |
| Projected net income from operations per above | $ 26,400 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 72,500 | $ 896,400 |
| Unrestricted cash balance at 12/21/20 [1] | 1,100,000 | - | - | - | - | - | - | - | - | - | - | - | - | 1,100,000 |
| Restricted cash balance for claims at 12/21/20 [2] | 1,968,800 | - | - | - | - | - | - | - | - | - | - | - | - | 1,968,800 |
| Wolfe Legal Group retainer (applied to claim) [3] | 61,765 | - | - | - | - | - | - | - | - | - | - | - | - | 61,765 |
| Aaron Cuker contribution | 200,000 | - | - | - | - | - | - | - | - | - | - | - | - | 200,000 |
| Total Plan funding receipts | 3,356,965 | 72,500 | 72,500 | 72,500 | 72,500 | 72,500 | 72,500 | 72,500 | 72,500 | 72,500 | 72,500 | 72,500 | 72,500 | 4,226,965 |
| Plan disbursements: | | | | | | | | | | | | | | |
| Administrative expenses | | | | | | | | | | | | | | |
| Solomon Ward Seidenwurm & Smith LLP | 195,000 | 16,667 | 16,667 | 16,667 | 16,667 | 16,666 | 16,666 | - | - | - | - | - | - | 295,000 |
| The Broken-Bench Law Firm | 36,000 | 5,000 | - | - | - | - | - | - | - | - | - | - | - | 41,000 |
| Squar Milner LLP | 45,000 | - | - | - | - | - | - | - | - | - | - | - | - | 45,000 |
| Prata & Daley, LLP (out-of-pocket expenses) [4] | 50,000 | 115,000 | 65,000 | 20,000 | - | - | - | - | - | - | - | - | - | 250,000 |
| Larson O'Brien, LLP (out-of-pocket expenses) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Clerk's office | - | 2,000 | - | - | - | - | - | - | - | - | - | - | - | 2,000 |
| Office of the United States Trustee [5] | - | 15,000 | - | - | 5,000 | - | - | 25,000 | - | - | 5,000 | - | 5,000 | 55,000 |
| | 326,000 | 153,667 | 81,667 | 36,667 | 21,667 | 16,666 | 16,666 | 25,000 | - | - | 5,000 | - | 5,000 | 688,000 |
| Undisputed claims, including interest | | | | | | | | | | | | | | |
| Chuck Easttom [6] | 28,129 | - | - | - | - | - | - | - | - | - | - | - | - | 28,129 |
| Franchise Tax Board [6] | 4,038 | - | - | - | - | - | - | - | - | - | - | - | - | 4,038 |
| Husch Blackwell LLP [7] | 45,507 | - | - | - | - | - | - | - | - | - | - | - | - | 45,507 |
| Interior Plant Service, Inc. [6] | 150 | - | - | - | - | - | - | - | - | - | - | - | - | 150 |
| Internal Revenue Service [6] | 381,095 | - | - | - | - | - | - | - | - | - | - | - | - | 381,095 |
| Jan-Pro [6] | 421 | - | - | - | - | - | - | - | - | - | - | - | - | 421 |
| Lincoln Loop [6] | 8,436 | - | - | - | - | - | - | - | - | - | - | - | - | 8,436 |
| Resonant Legal Media LLC [6] | 53,196 | - | - | - | - | - | - | - | - | - | - | - | - | 53,196 |
| | 520,972 | - | - | - | - | - | - | - | - | - | - | - | - | 520,972 |
| Disputed claims, including interest | | | | | | | | | | | | | | |
| Modus eDiscovery, Inc. [8] | - | - | - | - | - | - | 18,959 | - | - | - | - | - | - | 18,959 |
| Pillsbury Winthrop Shaw Pittman LLP [9] | - | - | - | - | - | - | 1,789,472 | - | - | - | - | - | - | 1,789,472 |
| Torrey Partners, LLC [10] | - | - | - | - | - | - | 409,738 | - | - | - | - | - | - | 409,738 |
| Wolfe Legal Group [3] [11] | - | - | - | - | - | - | 81,862 | - | - | - | - | - | - | 81,862 |
| | - | - | - | - | - | - | 2,300,031 | - | - | - | - | - | - | 2,300,031 |
| Subordinated insider claims | | | | | | | | | | | | | | |
| Aaron Cuker | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Patricia Atalla | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Plan disbursements | 846,972 | 153,667 | 81,667 | 36,667 | 21,667 | 16,666 | 2,316,697 | 25,000 | - | - | 5,000 | - | 5,000 | 3,509,003 |
| Net Plan receipts (disbursements) for period | 2,509,993 | (81,167) | (9,167) | 35,833 | 50,833 | 55,834 | (2,244,197) | 47,500 | 72,500 | 72,500 | 67,500 | 72,500 | 67,500 | 717,962 |
| Beginning cash available for creditors | - | 2,509,993 | 2,428,826 | 2,419,659 | 2,455,492 | 2,506,325 | 2,562,159 | 317,961 | 365,461 | 437,961 | 510,461 | 577,961 | 650,461 | - |
| Ending cash available for creditors | $ 2,509,993 | $ 2,428,826 | $ 2,419,659 | $ 2,455,492 | $ 2,506,325 | $ 2,562,159 | $ 317,961 | $ 365,461 | $ 437,961 | $ 510,461 | $ 577,961 | $ 650,461 | $ 717,961 | $ 717,962 |

**EXHIBIT E**

**In re: Cuker Interactive, LLC** DRAFT
**Summary of Post-Confirmation Projections**

| | Months Ended | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **12/21/20 - 12/31/20** | **01/31/21** | **02/28/21** | **03/31/21** | **04/30/21** | **05/31/21** | **06/30/21** | **07/31/21** | **08/31/21** | **09/30/21** | **10/31/21** | **11/30/21** | **12/31/21** | **Total** |

Notes:

*Sources* : Debtor's summary of claims in case and proofs of claim as filed with the court, other bankruptcy documents, post-judgment rate information from bankruptcy court website and Plan information per counsel.

(1) As of August 31, 2020, unrestricted cash balance held by the Debtor was in excess of $1.1 million. The Debtor anticipates balance will be greater by 12/21/20.
(2) This account is commonly referred to as the Wal-Mart proceeds account.
(3) Per proof of claim, creditor holds a security interest in retainer in the amount of $61,765.45. For purposes of this projection, retainer is reflected as both a Plan receipt at 12/21/20 [estimated Plan effective date "PED"] and a Plan disbursement once the claim has been allowed.
(4) Based on discussions with counsel, the Debtor estimates out-of-pocket costs between $250,000 and $300,000. As of the date of this filing, the Debtor has already issued payments in excess of $39,000. For purposes of this projected cash flow, $250,000 is expected to be paid during the referenced period.
(5) Projected United States Trustee quarterly fees reflect anticipated closure of the case in December 2021.
(6) Interest rate is 2.69%. Days used in unsecured interest rate calculation: petition date to PED. Interest is calculated based upon 365 days per year.
(7) Claim has been settled with no additional interest to be provided.
(8) Interest rate is 2.69%. Days used in unsecured interest rate calculation: petition date to PED. Contract interest rate used to calculate is 18.0% after PED. Interest is calculated based upon 365 days per year.
(9) Interest rate is 2.69%. Days used in unsecured interest rate calculation: petition date to PED. Contract interest rate used to calculate is 10.0% after PED. Interest is calculated based upon 365 days per year. Due to ongoing claims resolution efforts, including arbitration, appeal, etc., there is uncertainty regarding the treatment and timing of potential payments for Pillsbury claim.
(10) Interest rate is 2.69%. Days used in unsecured interest rate calculation: petition date to PED. Contract interest rate used to calculate is 8.0% after PED. Interest is calculated based upon 365 days per year.
(11) Interest rate is 2.69%. Days used in unsecured interest rate calculation: petition date of 12/13/18 to PED. Contract interest rate used to calculate is 21.6% after PED. Interest is calculated based upon 365 days per year.

**EXHIBIT E**

# EXHIBIT F

**In re: Cuker Interactive, LLC** **DRAFT**

**Summary of Undisputed Claims: Proofs of Claim and Calculation of Interest**

| | |
|---|---|
| Projected effective date of the Plan ("PED") | 12/21/20 |
| Chapter 11 petition date | 12/13/18 |
| # of days to PED | 739.00 |
| Post-judgment rate as of 12/13/18 (interest rate for unsecured claims) | 2.69% |
| Daily interest rate | 0.00737% |
| Days per year | 365.00 |

| Claim No. | Creditor | Amount Claimed | Projected Amount Payable | Daily Interest Amount | Unsecured Postpetition Interest | Total Amount Payable at PED |
|---|---|---|---|---|---|---|
| 1 | Resonant Legal Media LLC | $ 50,447.22 | $ 50,447.22 | $ 3.72 | $ 2,749.08 | $ 53,196.30 |
| 3-3 | Internal Revenue Service (1) | 361,408.40 | 361,408.40 | 26.64 | 19,686.96 | 381,095.36 |
| 4 | Franchise Tax Board (1) | 3,830.62 | 3,830.62 | 0.28 | 206.92 | 4,037.54 |
| 7 | Husch Blackwell LLP (2) | 182,027.53 | 45,506.88 | N/A | - | 45,506.88 |
| 9 | Aaron Cuker | 135,000.00 | - | N/A | - | - |
| 15 | Patricia Atalla | 650,000.00 | - | N/A | - | - |
| Sched | Chuck Easttom | 26,673.33 | 26,673.33 | 1.97 | 1,455.83 | 28,129.16 |
| Sched | Interior Plant Service, Inc. | 143.00 | 143.00 | 0.01 | 7.39 | 150.39 |
| Sched | Jan-Pro | 399.00 | 399.00 | 0.03 | 22.17 | 421.17 |
| Sched | Lincoln Loop | 8,000.00 | 8,000.00 | 0.59 | 436.01 | 8,436.01 |
| | | $ 1,417,929.10 | $ 496,408.45 | | $ 24,564.36 | $ 520,972.81 |

Notes:

*Sources* : Debtor's summary of claims in case, proofs of claim as filed with the court and other bankruptcy documents.

(1) Includes both priority and general unsecured components of claims.

(2) Claim has been settled with no additional interest to be provided.

**EXHIBIT F**

**In re: Cuker Interactive, LLC** **DRAFT**

**Summary of Disputed Claims: Proofs of Claim and Calculation of Interest**

| | |
|---|---|
| Projected effective date of the Plan ("PED") | 12/21/20 |
| Chapter 11 petition date | 12/13/18 |
| Projected payment date | 06/01/21 |
| # of days to PED | 739.00 |
| Post-judgment rate as of 12/13/18 (interest rate for unsecured claims) | 2.69% |
| Daily legal interest rate | 0.00737% |
| # of days from PED to projected payment date | 162.00 |
| Days per year | 365.00 |

| | | | | | | Legal Interest Rate Petition Date to PED | | Statutory or Contract Interest Rate PED to Projected Payment Date | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Claim No.** | **Creditor** | **Amount Claimed** | **Principal** | **Retainer Funds** | **Projected Amount Payable** | **Daily Interest Amount[(1)]** | **Total Interest** | **Interest Rate** | **Daily Interest Rate** | **Daily Interest Amount[(2)]** | **Total Interest** | **Total Amount Payable at Projected Payment Date** |
| 5-3 | Wolfe Legal Group, PC [(3)] | $ 75,366.96 | $ 60,029.23 | $ 61,765.45 | $ 13,601.51 | $ 1.00 | $ 739.00 | 21.60% | 0.05918% | $ 35.53 | $ 5,755.86 | $ 81,861.82 |
| 6-1 | Modus eDiscovery, Inc. | 16,951.23 | 13,562.79 | - | 16,951.23 | 1.25 | 923.75 | 18.00% | 0.04932% | 6.69 | 1,083.78 | 18,958.76 |
| 11-2 | Torrey Partners, LLC | 377,526.06 | 328,127.94 | - | 377,526.06 | 27.82 | 20,558.98 | 8.00% | 0.02192% | 71.93 | 11,652.66 | 409,737.70 |
| 13 | Pillsbury Winthrop Shaw Pittman LLP | 1,637,418.71 | 1,416,376.50 | - | 1,637,418.71 | 120.68 | 89,182.52 | 10.00% | 0.02740% | 388.09 | 62,870.58 | 1,789,471.81 |
| | | $ 2,107,262.96 | | $ 61,765.45 | $ 2,045,497.51 | | $ 111,404.25 | | | | $ 81,362.88 | $ 2,300,030.09 |

Notes:

*Sources* : Debtor's summary of claims in case, proofs of claim as filed with the court and other bankruptcy documents.

(1) Calculated using projected payable amount.

(2) Calculated using principal amount.

(3) Per proof of claim, creditor holds a security retainer in the amount of $61,765.45 plus a security interest in the Debtor's claim against Pillsbury. Amount payable at projected payment date above includes release of retainer. Creditor filed an amended claim to seek statutory/contract rate interest.

**EXHIBIT F**